ALBANY,
August, 1806.

Mumford
v.
Hallett.

*3 *Term*, 454.
†4 *Term*, 466.

Judgment for the defendant.

## G. S. Mumford *against* R. S. Hallett.

THIS was an action on a policy of insurance. The cause was tried at the *New-York* Sittings, the 17th day of *June*, 1805, before Mr. Justice *Tompkins*.

The policy was in the usual printed form of a policy on cargo ; and the blank was filled up with the following words : *At and from Cumana, Spanish-Main, to New-York, with liberty to touch at Curacoa or Saint Thomas, in and with the schooner* RISING-SUN, *on profits;* then followed the printed words, " on all goods and merchan- " dizes laden or to be laden, &c. the said goods and mer- " chandizes for so much as concerns the assured and as- " surers in this policy, are, and shall be, valued at" 2500 dollars ; to which amount the policy was underwritten. The policy, interest, and preliminary proofs were admitted.

The broker was called to prove, that it was the usual practice, as there were no blank policies on profits, to take a blank policy on *cargo*, to fill it up in the same manner the present policy had been, and to insert the valuation of the subject insured, without making any alteration in the printed words ; that this valuation is al-

*Marginal note:* Where a printed blank policy on *cargo*, was used, and the blank filled up for an insurance on *profits*, and the *valuation* in . writing, when taken in connexion with the printed words, was a valuation of the goods, and not of the profits, it was held, that *parol* evidence was inadmissible to explain the intention of the parties, there being no ambiguity in the words as they stood. Every policy on *profits* must, of necessity, be a valued, not an open policy. Where the vessel and cargo were captured, and the owner of the

goods abandoned them, and also abandoned his interest to the insurers on the *profits* ; it was held, that he was entitled to recover against the latter for a *total loss*, notwith- standing a previous abandonment of the goods to the insurers on the cargo, who received the goods after their release by the captors, and sold them, on their own ac- count, to a profit.

ways understood to refer to the premises insured, whatever may be the printed words in other parts of the policy; That at the time the defendant underwrote the policy in question, it was stated to him that the profits were valued at 2500 dollars, to which he assented by subscribing his name; and that the policy was so filled up, with the intention of expressing the value of the profits, as agreed on between the parties. This evidence was objected to on the part of the defendants, but was admitted, and the question as to its admissibility was reserved. The vessel sailed from *Cumana* with a cargo of cocoa and hides, in *October*, 1800, and was captured on the 10th of *October*, by a British privateer, and carried into *Bermuda*, where, on the 5th of *November*, she was libelled in the vice-admiralty court. On he 24th of *December*, a decree of restitution was made, on payment of costs and expenses to the captors; and in *January*, 1801, the vessel with her cargo arrived at *New-York*. The cargo had been insured, in *New-York*, by the Columbian Insurance Company, for the same voyage, and after the capture, the assured, on the 22d of *November*, abandoned to the assurers, who accepted the abandonment, and paid as for a total loss. An abandonment on the present policy was made about the same time. The cargo, on its arrival, was taken possession of by the assurers, and sold at auction for their account, to a considerable profit. The jury found a verdict for the plaintiff, for a total loss.

A motion was now made to set aside the verdict.

*S. Jones*, for the plaintiff. 1. Though by the grammatical construction of the words, as they stand in this policy, the valuation refers to the *goods;* yet, from the evidence of the broker, as well as from the apparent object of the whole instrument, it must have been the intention of the parties to have valued the profits only. It would be absurd to apply the valuation to the goods, for the profits were the thing insured; this would make the goods and profits of the same value. Now, it appears that the goods at *Cumana*, were worth 14,000 dollars.

[LIVINGSTON, J. There can be no doubt as to the inten-tion of the parties; but can parol proof be admitted to explain or vary a written instrument?]

Parol evidence was admissible to show the practice in fill-ing up such policies. The evidence does not destroy, nor vary the contract; it merely explains the instrument so as to give it meaning and effect.

[*Livingston*, J. Can there be an *open* policy on profits?]

Policies on profits always are, and necessarily must be, valued. Where the *subject-matter* is clearly set forth in an instrument, the other expressions are to be taken in refe-rence to that subject-matter, which, in case of doubt or ambiguity, is to govern in ascertainig the meaning of parti-cular expressions. Here the *subject-matter* was profits, and referring the valuation to that, the policy, otherwise am-biguous or absurd, is made clear and intelligible. These instruments are always construed liberally, according to the usage of merchants, and in favour of the assured.*

2. Supposing this to be an open policy, enough ap-pears in the case to show a loss to the amount express-ed in the policy. But every policy on profits, *ex ne-cessitate rei*, must be valued, otherwise, it would be ex-tremely difficult, if not impossible, to ascertain the amount to be recovered. By the decision of this court in the cases of *Abbot* v. *Sebor* and *Tom* v. *Smith*,† *profits* are declar-ed to be an *insurable interest*, and may be abandoned. By the capture, there was a total loss, and the abandon-ment having been made before the restoration, the plain-tiff's right to recover became vested, and is not to be de-feated by any subsequent event. If profits, *eo nomine*, be a distinct insurable interest, as admitted in *England* and in our own courts, it follows, as a necessary consequence, that the party may abandon them separately, from the goods, and all the other incidents and effects of a distinct subject of insurance are attached to it, other-wise the separate insurance would be nugatory. It would be idle for the law to say, you may insure *profits*, *eo nomine*, as a distinct interest, but you cannot abandon

ALBANY,
August, 1806.

Mumford
v.
Hallett.

*Marshall,164.

† 3 *Caines*, 245.

and recover separately. If separate insurances be allow-ed on these several subjects, the principle must operate throughout, so as to give a full and complete effect to the separate contract. It may be, that an insurance on profits will, in effect, partake of the nature of a gaming contract; but this can be no objection while it remains lawful for parties to enter into such contracts. The *English* courts, to be sure, have found themselves embarrassed in some late cases, in regard to separate insurances on vessel and freight, which have been severally abandoned; and have decided freight to be an inseparable incident of the ship, but this court, with very good reason, have determined otherwise.‡ The language of the assurer is, for such a premium, I undertake that you shall not be prevented, by any of the enumerated perils, from gaining such a sum, as profit. If any inconvenience should result to the insurer on profits, on account of an abandonment to the insurer on the goods, as in regard to salvage, it is an inconvenience he is bound to foresee when he enters into the contract, and is not to prejudice the rights of the insured on such contract. That is a question between the different underwriters, on the different subjects.

‡ *Davy* v. *Hallett.*
3 *Caines,* 21.

*Pendleton,* for the defendant. 1. The written and printed words of this policy are express and clear. If a mistake has crept into the contract contrary to the intention of the parties, they must go into a court of chancery to correct it. It cannot be done here, by the explanation of witnesses. It is true, that if a part of the contract be printed, and a part written, and there be any inconsistency, the written are to controul the printed words. But here there is no inconsistency. It is said, that the printed words were not altered; but, surely, the insurer might and ought to have added written words to controul their meaning. 2. In regard to policies on *interest*, the criterion of insurableness, is the capacity of the insured to tranfer to the insurer the benefit of *salvage*. Every act of th insured, therefore, which deprives the insurer of this benefit, is a violation, or dissolution of the contract. By first aban-

doning the cargo to the insurer on goods, he elects to receive his indemnity from him, and waives all claim on the insurer on the profits. If the goods be valued, profits may be included in the valuation, and thus a double indemnity might be obtained, on the principles contended for by the other side.

[KENT, C. J. How do you distinguish this case, in principle, from that of *Davy v. Hallett ?*]

Profits are, in their nature, inseparable from the goods. The owner has his goods and the profits on them after deducting the freight. In case of an abandonment to the insurer on goods, he would take all the profits arising from the sale of the goods. To any demand of the insurer on profits, he might answer, I know nothing of your contract, it is a matter *inter alios acta,* with which I have no concern. The *English* courts have decided that *freight* is an *inseparable* incident of the ship ; though this court have thought otherwise, they may, consistently, and on just grounds, declare profits to be an inseparable incident of the goods. On this principle, the insured who voluntarily abandons, and parts with the subject, must be considered as abandoning, also, all claim to the profits. To avoid any inconvenience of this sort ; an agreement may previously be made with the insurer on goods, so as to save the insurance on profits. The party has it always in his power to secure his right to profits, by keeping the goods, or by an agreement with the insurers, previous to an abandonment. The reasoning in *M·Arthy v. Abel,** though a case of freight, applies with great force, in this view of the subject, to the question now before the court.

3. The goods received and sold by the insurers on the cargo, did in fact yield a clear profit of 2000 dollars. If we suppose a right to abandon to the insurers on both subjects, then the insured ought to account for the profits he has voluntarily transferred, or bear the loss. In this way only can he be restrained in the arbitrary exercise of his right, and be compelled to do justice. Either

ALBANY,
August, 1806.

Mumford
v.
Hallett.

* 5 *East,* 388

the insurers on *profits*, ought to have recourse to the insurers on the goods, which is not allowable, or the insured, who has by a voluntary act, deprived the insurer on *profits*, of the benefit of this claim in case of salvage, ought to lose the benefit of the policy. There is nothing unreasonable, impracticable, or unjust, in this doctrine.

*Hoffman*, in reply. 1. The parol evidence to show the intention of the parties, and explain the policy, by the invariable usage was admissible. It was not to contradict or defeat the instrument. This has been often done in the construction of a charter-party, where the usage of trade is resorted to in order to explain the meaning of words* used in that instrument. 2. Every policy on *profits* must be valued, otherwise, the assurer might be made liable for the fluctuation of a market. The contract is, if the goods be lost, I will pay you what it is agreed you might have gained by their safe arrival. Insurance on *profits*, as well as on *freight*, is allowed in *England*;* and though some difference exists between the courts of that country, and of this, in regard to the effect of these separate interests, yet the case of *freight*, is perfectly analogous to that of *profits*; and the principle that has governed the decision of the one, ought to determine the other. *Freight* grows out of the ship; profits out of the cargo. The argument as to the loss of the benefit of salvage, in an insurance on profits, when the goods are abandoned, is equally applicable to a separate insurance on freight. This inconvenience must be foreseen by the insurer, at the time he enters into the contract, and he must, therefore, sustain it. At the time the abandonment was made by the plaintiff, there was a technical total loss by one of the perils insured against, and that loss has continued unchanged by any subsequent event. The insured, in regard to the policy on the goods, has done no act that he was not authorised to do by the terms of his contract; and the act of abandonment on another and distinct contract, ought not to prejudice his right to a recovery against the present defendant.

* *Abbot*, 162—172, and the cases there cited.

† 5 *East*, 316. *Hodgson* v. *Glover*.
2 *East*, 544. *Barclay* v. *Cousins*.

ALBANY,
August, 1806.

Mumford
v.
Hallett.

LIVINGSTON, J. delivered the opinion of the court. As there is no contradiction between the written and printed parts of this policy, and no ambiguity in its terms, *parol* evidence cannot be received to explain the intention of the parties ; nor ought the usage of merchants to be resorted to, where the language used is so explicit, as it is here. It is an insurance on profits, and the goods from which the profits were expected, are valued at twenty-five hundred dollars. This valuation, it is said, was intended to be put on the profits, and not on the goods, and that printed policies on cargoes are generally used for these insurances. This may be so, but we must only look to what has been done, and not to what was intended. If the parties will not make use of a proper policy, nor make the necessary corrections in the printed forms which they do use, it is their own fault.

There is another ground, however, on which the plaintiff may recover. Though the profits are not valued, yet every such insurance must, of necessity, be considered as a valued, and not an open policy ; especially, if the goods themselves, as is the case here, are valued. If it were otherwise, it would be next to impossible to prove their value, as is done in regard to vessels and cargoes. In these cases, it is easy to show what the different subjects cost, but how are you to ascertain what is often imaginary and must depend on so many contingencies ? It does not follow that a profit will be made, if the cargo arrives ; yet its loss would give a right to recover on such an insurance.

But admitting that this is to be regarded as a valued policy, it is said, that the assured, by abandoning the cargo to its underwriters, has put it out of the power of the defendant, to receive any salvage on the profits, and that, therefore, he has no right to recover in this suit. This is a dilemma which the defendant ought to have foreseen at the time of his subscription. He must have supposed there was a policy on the cargo, which, in case of disaster, would naturally be abandoned to those who had insured it. It is idle to complain of what must have been clearly his own understanding of the contract ; nor is it reasonable in him to expect,

ALBANY,
August, 1806.

* 3 *Caines*, 246.

that for the purpose of recovering on a small policy, on pro-fits, a merchant should, by not abandoning the cargo, fore-go his insurance on that subject. We have said in *Tom* v. *Smith*,* than an insurer on profits is entitled, as against the insured, to an abandonment, but what right, he would there-by acquire against an insurer of the goods, was not then settled, nor is that point now before us. We mean only to decide, that a double abandonment, as in this case, does not deprive him of his remedy on a profit-policy, and that, therefore, the plaintiff must have judgment. This decision conforms with our judgment in the case of *Davy* v. *Hallett*, where there was supposed to exist a similar conflict between the underwriters on the vessel and those on freight.

Judgment for the plaintiff.