BEVIN *vs.* THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

The rule, that a contract of insurance is one of indemnity only, prevails in life insurance, as well as in fire and marine insurance.

The plaintiff, having advanced to B three hundred dollars in money, and sundry articles of personal property, under an agreement that the latter should go to California, and there labor, for at least one year, and account to the plaintiff for one-half of his gains, insured the life of B for one thousand dollars. Held, that the plaintiff had an insurable interest in the life of B and that his policy was a valued one for that amount.

Where such policy, which was issued by a mutual life insurance company, contained a stipulation that B without the consent of said company previously obtained, should not pass beyond the settled limits of the United States, and in consideration of extra premiums from year to year, for three years, they endorsed on said policy a permit, authorizing B to pass by sea, in decked vessels, from any port in the United States, north of the thirty-sixth degree of north latitude, to and from any port in North and South America, except Chagres, and to reside in California for the term of one year, and B sailed from New York to Vera Cruz, crossed thence by land to San Blas, and sailed from that port in a decked vessel to California, where he resided for three years, until his death. It was held in an action on said policy, 1. That parol

Bevin *v.* The Connecticut Mutual Life Insurance Company.

evidence was admissible to show, that the defendants knew, before issuing said policy, that B intended to take such route across the country of Mexico, to California, that afterwards they knew that he went by said route, and had arrived there in safety, and that for the period of three years after his arrival, they continued to receive the extra premium for such residence. 2. That if the taking such route by B, was a violation of the stipulation in said policy, the subsequent acts of the defendants amounted to a waiver, and that the plaintiff was entitled to recover.

THIS was an action of *assumpsit*, brought by Abner G. Bevin, against the Connecticut Mutual Life Insurance Company, upon a policy of insurance, made for one thousand dollars, in favor of the plaintiff, upon the life of George Barstow.

The cause was tried before the superior court, for the county of Middlesex, at the term holden in March, 1854.

The court found the following facts.

In consideration of the annual premium of thirty-three dollars and ten cents, the defendants, on the 22d day of January, 1849, executed, and delivered to the plaintiff, a policy of insurance on the life of George Barstow, deceased, for the sum of one thousand dollars, during the whole continuance of said Barstow's life. Said policy contained a stipulation that said Barstow should not, without the consent of the defendants previously obtained, and endorsed thereon, pass beyond the settled limits of the United States, (nor visit those parts of the United States, which lie south of the southern boundaries of the states of Virginia and Kentucky, between the first of June and the first of November.)

The defendants also executed and endorsed upon said policy the following permit.

"For, and in consideration of fifteen dollars, being one and a half per cent. extra premium, charged on annexed policy No. 3,277, the within named George Barstow is hereby permitted to pass by sea, in decked vessels, from any port in the United States, north of the thirty-sixth degree, north latitude, to and from any port in North or South America, Chagres excepted, and to reside in California,

and country adjacent, for the term of one year from the date hereof.

"And in further consideration of an annual extra premium of fifteen dollars, to be paid on or before the 22d day of January, in every year during the use of this certificate, the insured is permitted to continue so to pass by sea, and reside as aforesaid, without prejudice to this policy."

At the stipulated time in each year, from 1849 to 1852, inclusive, the plaintiff paid the defendants the annual premium] named in said policy, and the extra premium named in said permit.

On the second day of September, 1852, said Barstow died in California, of the cholera-morbus; the defendants were duly notified of Barstow's death, and payment of the amount of the policy was demanded of them, by the plaintiff.

The amount paid by the plaintiff for premiums, and permits, upon said policy, was one hundred and ninety-two dollars and eighty cents.

On the eighth day of January, 1849, the plaintiff advanced to said Barstow, three hundred and fifty dollars, under the following agreement.

"Received, Chatham, Jan. 8th, 1849, of Abner G. Bevin, the sum of three hundred and fifty dollars, to be used and applied as herein after specified, according to agreement made this day.

GEORGE BARSTOW.

"This agreement, made this eighth day of January, 1849, between George Barstow, of Chatham, on the one part, and Abner G. Bevin, of Chatham, on the other part, witnesseth, that the said Barstow agrees on his part, for the above-named sum of three hundred and fifty dollars, to proceed as soon as practicable to California, and there to engage in mining and procuring gold, or to employ himself in the best and most profitable way, in which he can engage, and is to keep a correct account of all his expenses, and whatever more he obtains, he is to divide equal with the said Bevin, and if

there is an opportunity to remit to the United States, agrees to do so, as often as he has an opportunity, and inform the said Bevin of the same, and also to inform the said Bevin how his letters can reach him, and is to be employed, as above specified, until he returns home, at least one year, if his health will permit."

To enable said Barstow the better to perform said agreement, the plaintiff also advanced to him articles of personal property, to the value of nineteen dollars. In pursuance of said agreement, Barstow proceeded to California, where he arrived about the middle of May, 1849, and went immediately to the mines, and was engaged in mining and procuring gold under his agreement with the plaintiff, until his death. On his way to California, and after his arrival there, he enjoyed good health until the sickness which terminated in his death.

Said Barstow, in proceeding to California, left New York on the 16th day of January, 1849, in a substantial decked vessel for Vera Cruz, making the passage from New York to Vera Cruz in fourteen days; he remained in Vera Cruz, eight or ten days, whence he proceeded by land across the republic of Mexico, and through the city of Mexico to the port of San Blas, on the Pacific ocean, a distance of nearly one thousand miles, where he arrived in March. He remained at San Blas about three weeks, when he embarked in another substantial decked vessel, and proceeded, by sea, to San Francisco, where he arrived on the 14th of May, 1849, making no unnecessary or unreasonable delays in his journey. The route taken by said Barstow, was one of the several routes of travel, then pursued, by persons going from the United States to California, and was not particularly hazardous, although the people of Mexico, along the route, were hostile in their feelings towards the citizens of the United States. He experienced no serious inconvenience on his journey, from the climate or any other cause, and his health during all that time, continued good.

The court also found, (if parol testimony was admissible to prove the same,) that on the 15th day of January, 1849, during the negotiation for said policy, the plaintiff, said Barstow, and Guy R. Phelps, the secretary of the defendants, and who usually attended to the business of issuing policies, were together, in the defendants' office; that said Phelps inquired of Barstow, which route he was going to take, and Barstow replied that he was going with Captain Hutten (commander of the barque Eugenie) to Vera Cruz, and thence across the country, (the route which he afterwards took,) and said Phelps remarked, that a trip would do him good,—would be for his health; that Phelps, who also acted as the physician of the company, then invited the said Barstow into another room and there made the medical examination. Said Barstow then left said office, and the next day sailed from New York, on his way to California. Said policy was not issued by the defendants, nor the first payment received thereon, until some time after said Barstow had sailed on said voyage, and after the defendants, by reason of the facts aforesaid, had reason to believe that he had taken the route, which he did take. There was no evidence that the defendants, at either of these times, or when the subsequent payments were made on said policy, made any objections to the route taken, by the said Barstow.

To the admission of the aforesaid parol testimony, the defendants objected; and the question, as to its admissibility, was reserved for the consideration and advice of this court, and if said court should be of opinion that the same was admissible, then the facts depending upon such testimony were found to be true, but otherwise, not proved.

The court also reserved, for the advice of this court, the question what judgment ought to be rendered in the case.

*Bulkeley,* for the plaintiff contended,

1. That it appears from the contract between the plaintiff and Barstow, that the former had an insurable interest in

Barstow's life.    One, who is liable to a pecuniary loss by the death of any person, has an insurable interest in the life of such person.    1 Phill. on Ins., 200.    Reynolds on Ins., 41.

An interest, contingent in itself, that might be defeated, or might not have been of any value to the assured, is a good insurable interest.    1 Phill. on Ins., 200, 201.    *Lord* v. *Dall*, 12 Mass., 115.

2. That the policy is a valued one.    The extent of the interest is the amount insured, in those cases where the interest is subject to be affected by the skill and capacity of another, there being no mode of legally ascertaining the precise amount of loss and damage.    2 Phill. on Ins., 35, 441. *Lord* v. *Dall*, 12 Mass., 115.    Reynolds on Ins., 42.

3. That Barstow, by the terms of his permit, had a right to take the route he did.    The printed form of permit was adapted to the terms of the agreement between the parties. He had a right to go to and from, any port in North and South America, Chagres excepted, and to reside in California and the country adjacent.    Mexico being adjacent, he could reside there, and could certainly pass from one port to another of that country.

4. That if it were a violation of the policy and permit, for Barstow to take the route he did, the company have waived a compliance with the conditions of the policy; that having received the premiums from time to time, knowing the route he took, they are estopped from claiming a violation of the condition, and that parol evidence is admissible to prove such waiver and estoppel, and to explain words of indeterminate meaning.    *Allen* v. *Verm. Ins. Co.*, 12 Verm. R., 366.    1 Phill. on Ins., 490, 586.    *Frost* v. *Saratoga Ins. Co.*, 5 Denio, 154.    3 Wash. C. C. R., 159.    20 Conn. R., 563. 17 Conn. R., 353, 361.    1 Greenl. Ev., § 228, p. 412.    *Fish* v. *Hubbard's adm'rs*, 21 Wend., 651.    21 Conn. R., 451.

*W. D. Shipman,* for the defendants, contended,

1. That the plaintiff had no insurable interest in the life of the deceased, and therefore cannot recover.

2. That the condition, that the subject should not go beyond the settled limits of the United States, is a warranty, the violation of which, by the terms of the contract, renders the latter null and void. 1 Phil. Ins., § 65, § 754, § 891. 3 Kent's Com., 288. *Wood* v. *Hartford Fire Ins. Co.,* 13 Conn. R., 533. *The Glendale Woolen Company* v. *The Protection Ins. Co.,* 21 Conn. R., 19. *Sheldon & Co.* v. *Hartford Fire Ins. Co.,* 22 Conn. R., 235. *Jennings* v. *The Chenango Mut. Ins. Co.,* 2 Denio, 75.

3. That the condition, being in the nature of an express warranty, any variation, whether material to the risk or not, avoids the policy. *New Castle Fire Ins. Co.* v. *M'Morran,* 3 Dow. R., 262. *Pauson* v. *Watson,* Cowper, 785. *Blackhurst* v. *Cockell,* 3 Term. R., 360. 1 Phil. Ins., § 893. *De Haln* v. *Hartley,* 1 T. R., 343. *Jefferson Ins. Co.* v. *Cotheal,* 7 Wendell, 72. *Duncan* v. *Sun Fire Ins. Co.,* 6 Wend., 488. *Fowler* v. *Ætna Ins. Co.,* 7 Wend., 270.

4. That before the subject could leave the settled limits of the United States, without forfeiting his policy, he must have obtained the consent of the company. This being in writing, and endorsed on the policy, cannot be enlarged or varied by parol. 1 Greenl. Ev., § 275, *et seq.* *Warren* v. *Wheeler,* 8 Met., 97. *Vandervoort* v. *The Columbia Ins. Co.,* 2 Caines, 155. *Cheriot* v. *Barker,* 2 Johns., 346.

As the testimony offered by the plaintiff consists of the oral declarations of the parties, made prior to the execution of the contract, parol evidence of these would be inadmissible in an action upon any written contract, there being no ambiguity or imperfection in the language of the instrument, and they are especially so in one brought on an insurance policy. *Weston* v. *Emes,* 1 T. R., 115. *Jennings* v. *Chenango Mut. Ins. Co.,* 2 Denio, 75. *Glendale Woolen Co.* v. *The Protection Ins. Co.,* 21 Conn. R., 19. *Parks* v. *Genl. Int.*

*Ins.* Co., 5 Pick., 34. *Whitney* v. *Haven*, 13 Mass., 172. *Atherton* v. *Brown*, 14 Mass., 152. *Wiggin* v. *Boardman*, 14 Mass., 12. *Flinn* v. *Tobin*, 1 Mood. & Malk., 367. *Alston* v. *Mechanics'* *Mut. Ins. Co.*, 4 Hill., 329.

ELLSWORTH, J. Several questions of some practical importance are presented for our decision, in this case. We have occasion to decide only some of them, in order to make an end of this case, and shall, therefore, allude to such only with particularity.

It is said, first, that the plaintiff had no interest in the life of Barstow, when the policy was obtained, and if any, not the $1,000 stated in the policy. In marine and fire insurances, the questions and rules for ascertaining interest, are in general, well settled, and of every-day occurrence. In them the rule is, that the contract of insurance is one of indemnity only, recognizing policies being held to be illegal and void. The same is true, we suppose, in insurance on lives. In England, the statutes of George II. and George III., declare all policies of insurance without interest, to be null and void, and although the phraseology of the statute of George III. has given rise to distinctions there, in this country we hold the English statutes to be in affirmance of the principle of the common law, that policies of insurance are contracts of indemnity only.

Without deciding what is an insurable interest in the life of another, in every case—whether it must be one of a pecuniary value, or property, which the law recognizes as property, or may be something less or different, as the interest in one's relative, or in the life of another person—in this case we have no doubt there was an insurable interest, and one which the parties could well value, to the extent it was valued in the policy. The plaintiff had advanced to Barstow, the sum of three hundred dollars, besides articles of personal property, to enable him to go to California, and there labor, for at least one year, and to account to the

plaintiff for one-half of his gains in that business. He was the plaintiff's debtor, and partner, giving to the plaintiff an interest in the continuance of his life, as by that means, through his skill and efforts, the plaintiff might expect, not only to get back what he had advanced, but to acquire great gains and profits, in the enterprise. All the books hold this to be a sufficient interest to sustain a policy of insurance. As to the value of this interest, we think it must be held to be what the parties agreed to consider it, in the policy. This was the sum asked for by the plaintiff, and which the defendants agreed to pay in case of death, and for which they were paid in the premiums given by the insured. The policy must, we think, be held to be a valued policy. If otherwise, and the question of interest is open for proof on the trial, to be determined by the estimate which jurors may put upon the value of Barstow's life, under the circumstances, the policy may afford an inadequate and precarious security. Who can tell what the plaintiff would have gained, if Barstow had lived, and labored under his contract, in California? The plaintiff declared in the policy that he had an interest in the life of Barstow, of $1,000; the defendants received this declaration as true, and made it the basis of the insurance, and of their premium; now, without deciding that such a declaration is, in all cases, conclusive, as to the interest or damage, we hold, that in cases like the present, where there is not a definite and specific interest, and much is to depend upon the character and continuance of the enterprise, such declaration, if honestly made, is the agreed value of interest. The defendants knew what was claimed to be the interest of the insured; what the damages were estimated to be in case of death, and what amount the plaintiff wanted to secure; and the defendants agreed to this sum. It would be against good faith, and against the meaning of the parties, for the defendants now to refuse to pay as they agreed. In marine insurance, policies

on profits always are, and must be of necessity, valued. *Mumford* v. *Hallet*, 1 Johns., 433.

In *Lord* v. *Dall*, 12 Mass., 115, a sister obtained an insurance on her brother's life, about going to sea, on whose generosity and assistance she was dependent for support.   She recovered the whole sum; no question seems to have been made as to the amount, but only whether it was an interest which the law would recognize.   So, in every case, where a person, on his own account, insures the life of a relative, if the sum named in the policy is not to be the rule of damages, we enquire, what is?   The impossibility of satisfactorily going into the question, in most cases, and especially where there is nothing to guide the enquiry and everything is uncertain, would lead us to hold that a policy like this is a valued policy, as most consistent with the understanding of the parties, and the principles of law.   2 Phil. Ev., 52. Bury on Ins., 24.   3 Kent's Com., 219.   Ang. Life Ins., 321. 12 Mass., 118.

The next objection is, that the plaintiff has failed to keep one of the warranties which he was to keep, and therefore, cannot recover.   The warranty alluded to, is, that Barstow had, by the policy, no right to go out of the United States, and that he only obtained leave to go to California, and reside in a particular way, " to pass by sea in decked vessels, from any port in the United States, to and from any port in North and South America, Chagres excepted, and to reside in California."   The defendants insist that he went across the country, whereas he should have gone round the cape.   We are unwilling to yield to this objection so entirely foreign to the merits of the claim, unless compelled to by the clear import of the license given, for Barstow reached California in perfect health, in due time, and had resided there some three years, when he died of a sudden sickness, unconnected with his passage across the country.   The members of the court are not agreed in the exact construction to be put on this permit, and as there is another ground

on which a majority, if not all of us, are agreed, we shall pass this point of construction, and dispose of the case, on another ground. It appears that, before the policy was filled up, the company were told that Barstow was going across the country: and afterwards, they knew he had so gone, and had reached California in safety. They knew, too, he was residing there, and from year to year, for three years, they suffered the plaintiff to pay the entire enhanced premium for such residence there, upon the idea that the insurance was still in force. They were willing then to overlook the breach of warranty, if any it was, and they virtually renewed the insurance by taking the entire premium, until Barstow's death. Now, between man and man, in any ordinary transaction of business, such an objection would create surprise, and we should say it was unreasonable and untenable, and that this subsequent taking of the premium was a complete waiver of the objection, even if well founded at first. Suppose the plaintiff had warranted that Barstow should sail by the first of January, and he did not until the fifth, but reached California, in health, and after that, the company had received the stipulated premium for years with full knowledge of this fact, while he was residing there under the permit; would they not be liable on the policy?

To prove the knowledge of the defendants, the parol evidence was offered, and, as we think, very properly, not to explain or qualify the written contract, there being no explainable ambiguity, but to prove that the defendants had knowledge at all times, of the fact that Barstow went to California across the country, and that they subsequently acted in view of such knowledge, inducing the plaintiff to continue to pay premiums.

We advise judgment for the plaintiff.

In this opinion the other judges concurred.

Judgment for the plaintiff.