THOMAS SAMPSON, JR. *vs.* SAMUEL S. SHAW, executor.

An agreement to make " a corner" in stock, by buying it up so as to control the market, and then purchasing for future deliveries, is illegal, and the parties thereto are not partners; and one of said parties, who has authorized the others to use his funds already in their hands in carrying out the agreement, cannot recover any amount actually expended or appropriated according to its terms, but can recover, in an action for money had and received, any balance not so expended or appropriated.

Under the Gen. Sts. *c.* 97, § 28, an action of contract for a debt due from a partnership may be maintained and a verdict rendered against the executor of a deceased partner; although the estate of such partner is insolvent.

CONTRACT against the executor of the will of John Q. Thaxter, for money had and received by the testator to the plaintiff's use.    The case was referred to an auditor.

At the hearing before the auditor, the plaintiff offered in evidence several accounts current rendered to him by J. Q. Thaxter & Company, a firm of stockbrokers, of which the defendant's testator was a member, and which had been employed by the plaintiff to buy and sell stock for him.    These accounts showed a balance in favor of the plaintiff.    The defendant objected to the admission of the accounts, on the ground of variance, inasmuch as they tended to show a contract between the plaintiff and J. Q. Thaxter & Company, and not between the plaintiff and John Q. Thaxter alone; but the auditor admitted them, and the plaintiff rested his case.

On evidence put in by the defendant, the auditor found that Edward T. Bouvé was a copartner with Thaxter during a part of the time covered by said accounts, under the firm name of J. Q. Thaxter & Company; that on February 1, 1864, the partnership was dissolved, and Bouvé withdrew, it being then agreed between Thaxter and Bouvé, that Thaxter should assume all the liabilities of the firm, and that Bouvé should receive nothing from the firm assets after that time, and should not be holden to pay any of the firm liabilities; and that all of the transactions set forth in said accounts during the existence of the firm, consisting of Thaxter and Bouvé, were with the firm, and all of the transactions set forth in the accounts be-

fore the establishment and after the dissolution of the firm were with Thaxter alone.

Upon other evidence offered by the defendant and admitted against the objection of the plaintiff, the auditor found "that the plaintiff, the firm of Thaxter & Company, and John Richardson entered into an agreement to operate in the stock of the Malden and Melrose Horse Railway Company, for the purpose of getting 'a corner,' Thaxter & Company taking one half, and the plaintiff and Richardson each one quarter, interest in the operation; that the plan of operation was as follows: Thaxter & Company were to be the managers, and were to buy up a large quantity of the stock and control it in such a manner as to make a large demand for it, so that parties selling on time would be compelled to pay large differences; Thaxter & Company were then to receive and make proposals and agreements thereon for the purchase of stock to be delivered at a future day, the parties agreeing to sell not then having the stock in possession or owning it, and then the sellers, when the day for delivery should arrive, would be compelled to pay such prices or differences as the parties to this combination might ask; the money to carry on the operation was to be furnished, and the profits or losses shared or borne, by the parties in proportion to their respective interests; that said stock at that time was of little, if any, intrinsic value, and was selling in the market for about five dollars per share; that Richardson paid in money from time to time, as called for, under the agreement, for carrying on the operations; that the plaintiff authorized Thaxter & Company to use his funds in their hands as far as necessary for the same purpose;" that Thaxter did proceed to make purchases, and in so doing expended a large sum of money; "that the operation in the Malden and Melrose stock was not successful; and that the money invested therein was substantially lost, and no settlement or adjustment thereof had ever been made."

The auditor on this evidence ruled that the "agreement for operating was illegal and void; that the parties did not become copartners by force of the agreement or any acts done in pursuance thereof; and that the defendant could not set up said

agreement or the acts done under it in answer to the plaintiff's claim."

It further appeared that the estate of the defendant's testator was insolvent, and the defendant contended that this was a bar to the further prosecution of the action, but the auditor ruled otherwise.

At the trial in the superior court, before *Putnam*, J., the auditor's report was introduced in evidence, and the rulings of the auditor were sustained; and the judge also ruled that the insolvency of the estate of the defendant's testator not only had no effect on the report of the auditor, but could have none on the verdict of the jury, and, after a verdict for the plaintiff for the full amount claimed, reported the case for the determination of · this court.

*G. A. Somerby & S. S. Shaw*, for the defendant. 1. The agreement was not illegal; the parties to it did not propose to violate any law themselves, but, at most, expected to avail themselves of the readiness of other dealers to sell "short;" by the agreement to share profit or loss, they became partners; and, the money claimed being the plaintiff's advance on partnership account, he can recover none of it except by bill in equity.

2. But if the agreement was illegal, the ruling "that the defendant cannot set up said agreement, or the acts done under it, in answer to the plaintiff's claim," was incorrect. The accounts produced were merely *primâ facie* evidence, which might be rebutted by the defendant. The plaintiff, by bringing an action for money had and received, relied on the receipt of the money and the implied promise to pay on demand. The defendant proposed to disprove such implied promise, by showing that the balance claimed was allowed to accumulate, and was left in his testator's hands, to be used for a specific purpose. If this purpose was illegal, then this balance constituted an advance for an illegal object; and, the parties being *in pari delicto*, it could not be recovered; and this, whether the parties became partners or not, and whether the plaintiff had any independent promise or obligation of the defendant's testator to repay or not. *Cannan* v. *Bryce*, 3 B. & Ald. 179. *McKinnell* v. *Robinson*, 3 M. & W. 434.

*Ex parte Bell,* 1 M. & S. 751. *Howson* v. *Hancock,* 8 T. R. 575. *Vandyck* v. *Hewitt,* 1 East, 96. *Staples* v. *Gould,* 5 Sandf. 411. *Worcester* v. *Eaton,* 11 Mass. 368. *White* v. *Buss,* 3 Cush. 448. *Collins* v. *Blantern,* 2 Wils. 347. *Perkins* v. *Savage,* 15 Wend. 412. At all events, money actually expended under the agreement ought not to be recovered. Whether technically partners or not, the plaintiff and his associates became contributors to a common fund for a common purpose. If, on the strength of the plaintiff's direction to use his funds, the defendant's testator proceeded to buy on joint account, he thereby executed the plaintiff's orders *pro tanto ;* and an executed order to spend money illegally cannot be recalled. The plaintiff's claim would, therefore, not be for a simple deposit of money, but for such balance as might remain after an account of actual disbursements had been taken. If such an account can be taken in the present action, the defendant should have liberty to go into it; if not, the plaintiff must seek an account elsewhere, or in a different form of action, setting out and disclosing the transaction. *Murray* v. *McHugh,* 9 Cush. 158.

3. The claim was for money had and received by the defendant's testator alone. The proof showed the receipt of money by him and another, which amounted to a variance. *Cunningham* v. *Hobart,* 7 Gray, 423.

4. The ruling that the auditor's report and the verdict of the jury could not be affected by a representation of insolvency was too broad. The questions which arose out of the combined facts of the insolvency of the estate and the nature of the plaintiff's claim, as one which the defendant owed as member of a partnership, should have been brought up and settled in the superior court before verdict. Gen. Sts. *c.* 99, §§ 10, 18, 20.

*T. H. Sweetser & W. S. Gardner,* for the plaintiff. 1. The agreement was illegal. Such an agreement to defraud the community is void as against public policy. Gen. Sts. *c.* 105, § 6. *Fuller* v. *Dame,* 18 Pick. 472. *Dewitt* v. *Brisbane,* 16 N. Y. 508. Met. Con. 266, and cases cited. A partnership cannot be formed for the purpose of carrying out an illegal or frauduent purpose. Met. Con. 116, and cases cited. The defendant can

not set up the agreement, because it is illegal, and he should not be permitted to prove that by the plaintiff's permission he has used all or any part of the proceeds of stocks sold by him for the plaintiff, in furtherance of the illegal agreement; for in so doing he would set up his own wrong. *Ex parte Bell*, 1 M. & S. 751.   *Simpson* v. *Bloss*, 7 Taunt. 246.   The plaintiff seeks to recover upon a distinct and independent contract which is tainted with no fraud or illegality.   *Wood* v. *Grimwood*, 10 B. & C. 679.   *Hamilton* v. *Canfield*, 2 Hall, 526.

2. The action was properly brought against the defendant's estate, even though the plaintiff's claim was against the copartners, Thaxter and Bouvé.   Gen. Sts. *c.* 97, § 28.   *Curtis* v. *Mansfield*, 11 Cush. 152.   The debt of the plaintiff was not against the firm, but was against Thaxter alone.

3. The insolvency of Thaxter's estate could not affect the judgment which the plaintiff might recover.   Gen. Sts. *c.* 97, § 28, authorize a creditor of a firm to bring his action against a deceased partner's estate, as if it was for a several indebtedness.

AMES, J.   The agreement to operate in the stock of the Malden and Melrose Horse Railway Company was relevant and material to the defence, and the auditor ruled correctly in deciding that the evidence tending to prove it was admissible.   It can hardly be denied that such a contract as that described in the auditor's report would be illegal and fraudulent.   No association to carry out such a purpose would be recognized, at law or in equity, as having any of the legal incidents of a copartnership.   Neither party, as against the other, can enforce what remains to be done, or correct what has been done, under a contract, or rather a conspiracy, of that description.   3 Greenl. Ev. § 90, and cases cited.   The auditor, therefore, ruled very correctly " that said agreement for operating was illegal and void, and that the parties did not become copartners by force of the agreement, or of any acts done in pursuance thereof."   But it does not by any means follow that the defendant cannot set up any acts done under the agreement, in answer to the plaintiff's claim.   On the contrary, although it is very clear that the law

will not aid one party to an illegal contract, to enforce it, so far as it remains executory, against the other, it is equally clear that it will not interfere " to restore the party who has paid money upon it." *Ball* v. *Gilbert,* 12 Met. 397. In other words, the law will not help either party. The defendant claims the benefit of the familiar maxim, *in pari delicto, melior est conditio possidentis.* If he can prove that Thaxter, at the plaintiff's request, had actually appropriated and paid part of the balance in his hands upon the joint enterprise, to that extent he makes an answer to the plaintiff's claim. He insists that the funds were left in Thaxter's hands with the understanding and agreement that Thaxter was to apply them, so far as should be found necessary, to the payment of the plaintiff's share of the expenses of the joint enterprise ; that in fact they were appropriated by the plaintiff himself to that object, so far as they should be wanted ; and that, although the plaintiff had the right to disaffirm the contract, revoke the authority, and reclaim the funds, yet, as he never did so, all moneys actually paid out by Thaxter for him and from his funds, on the joint scheme, stand on the same footing as if paid by the plaintiff with his own hand. We think that this view of the law is entirely correct, and that the defendant has a right to set up in answer to the plaintiff's claim, as far as they will go, any and all payments actually made by Thaxter or by Thaxter. & Company under the " cornering " agreement, if made on the plaintiff's account, by his authority, or with his consent. As between Thaxter and the plaintiff, there are no particular equities in favor of the latter that would entitle him to get back the money that has been laid out upon an unsuccessful enterprise by or for him, and thus to throw the whole loss upon his associates. This case seems to fall within the rule so clearly laid down in *Ball* v. *Gilbert,* 12 Met. 397. *King* v. *Green,* 6 Allen, 139. *White* v. *Franklin Bank,* 22 Pick. 181.

It is difficult to distinguish the case in principle from an action against a stakeholder in a wager. The wager is an illegal contract. The losing party may reclaim his deposit from the stakeholder, provided he gives notice and revokes the authority

before the money is actually paid over to the winner. *McKee* v. *Manice*, 11 Cush. 357.

We think the defendant has a right to have the question of fact passed upon, and that a new trial must be had to ascertain what exact sum, or whether any sum, belonging to the plaintiff, remained in the hands of Thaxter after deducting any and all sums which the defendant can prove that the testator paid under the " cornering " agreement, on the plaintiff's account, by his direction or with his consent.

The defendant, however, insists that the whole fund in Thaxter's hands was placed at his disposal by the plaintiff, without any limitation, to be used at discretion in execution of the illegal common purpose, and that the action cannot be maintained as to any portion of the fund, on the ground that money lent for an illegal purpose cannot be recovered back by the lender. He claims that the plaintiff agreed to pay his proportion ; that he set apart and appropriated a particular fund from which his share of the payments was to be made, and that he substantially authorized Thaxter to use the whole of it, if he thought fit, in carrying the scheme through. But this appears to be, strictly speaking, a question of fact rather than law. If the plaintiff advanced and lent the whole fund, with directions merely that the unexpended balance, if there should be any, should be repaid, he cannot recover, for the reason above stated. But if the direction given was merely that Thaxter from time to time should take from the fund enough to pay the plaintiff's proportion of the expenses incurred and investments made, to such extent as the necessities of the speculation should require, the unexpended balance in Thaxter's hands would not be considered as paid by the plaintiff on an illegal contract, but would be recoverable in this action.

It is argued on the plaintiff's behalf that the claim which he makes is for money had and received, traced distinctly to Thaxter's hands, and held by a contract tainted with no illegality ; that the defendant, in order to resist the claim, is obliged to set up an illegal agreement, and rely upon it, and that this necessity is the test as to the equality of the delict. However ingenious this suggestion may be, it can hardly prevent the court

from taking the whole transaction together, and considering what it is in substance and effect. The application of the maxim, *in pari delicto*, &c., does not depend upon any technical rule as to which party is the first to urge it apon the court in the pleadings. In practice, it is usually insisted upon by the defendant in answer to a *primâ facie* case.

The objection founded upon the fact that, during a part of the time covered by the various accounts rendered, Thaxter and Bouvé were partners, is disposed of by the provisions of the Gen. Sts. c. 97, § 28, under which the suit may properly be brought against the estate of Thaxter, as if the contract sought to be enforced had been joint and several. See *Burnside* v. *Merrick*, 4 Met. 544; *Curtis* v. *Mansfield*, 11 Cush. 152. It is possible, also, that, upon the evidence reported, the auditor may have found as a matter of fact that, by arrangement among all concerned, it had been made the separate debt of Thaxter, according to the rule in *Wild* v. *Dean*, 3 Allen, 579. Neither is the fact that the estate has been represented insolvent any bar to the prosecution of the suit, so far as to ascertain how much, or whether anything, is due to the plaintiff, although it is a very good reason for not allowing execution to issue. Gen. Sts. c. 99, § 20. *Verdict set aside.*