SOUHEGAN NATIONAL BANK *v.* WALLACE, *Adm'r.*

Damages resulting to a person from a crime, and for which he may maintain an action, may lawfully be adjusted by him with the offender.

An agent who has money belonging to his principal, cannot shelter himself and keep the money on the ground that it was furnished for an unlawful purpose.

An illegal contract may be rescinded so long as it continues executory, and the money paid under it recovered back.

ASSUMPSIT, to recover $1,000, balance of $20,000, entrusted by the plaintiffs to the defendant's intestate, and never accounted for; also, to recover for interest collected by him upon bonds belonging to the plaintiffs.

It appeared that the plaintiff bank was broken into in the night-time of October 19, 1874, and bonds and other securities of the value of over $100,000 stolen. A little more than one half of the securities stolen belonged to the plaintiffs, and the balance to a savings-bank and to different individuals, deposited in the plaintiffs' vault for safe keeping. Towne, the defendant's intestate, was president of the plaintiff bank, and continued to hold that office until his death, April 10, 1876. The plaintiffs' evidence tended to show that soon after the robbery, Towne informed the directors of the bank and the other owners of the stolen securities that he

had had an interview with one Peirson, in Baltimore, who was a detective, and in communication with certain persons who had the stolen securities in their possession, and that they would surrender them for the sum of $18,000 ; also, that he had promised to pay Peirson the sum of $1,000 in case the above proposition was accepted.   The directors of the bank, and the other owners of the securities stolen, authorized Towne to recover the securities upon the terms proposed, or upon such other terms, to the extent of $20,000, as might be found necessary to obtain the securities, and agreed that the expense of their recovery should be borne by the owners in proportion to the value of their respective securities.

To enable Towne to carry out the proposition, the plaintiffs placed in his hands the sum of $20,000, and immediately assessed the owners of the securities, including the plaintiff bank, that amount *pro rata*, and Towne took the money to Baltimore, and paid to Peirson $18,000, which sum the latter paid to the persons having the stolen securities in their hands, and Towne received in return the securities.   Towne then paid Peirson $1,000 for his services as interposer, and returned with the securities and delivered the same to their respective owners.

The other expenses incurred by the plaintiffs in recovering the securities, such as advertising, telegraphing, two journeys of Towne to Baltimore, &c., amounted to $944.92,—all of which was paid by the plaintiffs.   The total expense of recovering the securities was called $20,000, the plaintiffs' share being $10,294.30, and the balance was assessed upon the other owners, and paid by them to the plaintiffs.

The evidence further tended to show that all the expenses incurred by Towne in the recovery of the securities was paid by the plaintiffs, except the expense of his third and last journey to Baltimore, amounting to about $50, leaving in his hands, as claimed by the plaintiffs, the sum of $1,000 (less $50 as above), never accounted for, and which the plaintiffs claimed to recover in this suit.   The evidence further tended to show that Towne agreed to undertake the recovery of the securities without compensation, except for his necessary expenses.

The defendant requested the court to instruct the jury "that if they should find upon the evidence that any sum of money belonging to the bank was placed in the hands of Towne, with the understanding on the part of the directors or managers of the bank that it was to be used by him in his discretion to hire the robbers to restore the securities which had been stolen by them from the bank, the bank cannot maintain an action against Towne's estate to recover back any of the money remaining in his hands."

The court declined so to instruct the jury, but did instruct them that the plaintiffs would not be precluded from recovering of the defendant by reason of the arrangement entered into between Towne and Peirson.

To the refusal to instruct, and to the instruction given, the defendant excepted.   Verdict for the plaintiffs.

*A. W. Sawyer* and *B. Wadleigh,* for the plaintiffs.

*Towne* (of Massachusetts), *Cutter,* and *G. Y. Sawyer,* for the defendant.

BLODGETT, J. It is a well established legal principle, that all contracts which provide that anything shall be done which is positively prohibited by law, or morality, or public policy, are void, and that, consequently, money knowingly advanced and expended in furtherance of such contracts cannot be recovered; but this case does not fall within the principle.

The presumption of law is in favor of contracts; illegality will not be presumed; and if a contract is susceptible of two meanings, one legal and the other illegal, it is elementary that courts will adopt the former and not the latter, so that, if practicable, the contract may be rendered operative. Hence, if an agreement like the one here is entered into for the performance of an act which may be effected by lawful or unlawful means, the law will presume that the former was contemplated by the parties, and that what was done under it was legally done, until the contrary appears.

The obvious purpose of the plaintiffs and the other owners of the stolen securities, which were the subject-matter of the agreement, was to recover them; and it is equally obvious that this purpose of itself was not unlawful, nor was the manner of its proposed execution, unless it expressly contravened public policy. The securities were private property, and the public had no interest in their recovery provided nothing was done to compound the crime, or lessen or hinder the opportunities for the prosecution or conviction of the criminals. But, so far as appears, nothing whatever was done by the owners whereby the rights of the public were impaired or infringed in any respect by the arrangement entered into and carried out by them for the recovery of the property; for the case wholly fails to disclose any purpose or agreement on their part to suppress a prosecution of the offenders, or the evidence necessary to support it. This being so, the compromise of their civil rights was not unlawful, for it is well settled that " in all offences which involve damages to an injured party for which he may maintain an action, it is competent for him, notwithstanding they are also of a public nature, to compromise or settle his private damage in any way he may think fit." *Tyndall,* C. J., in *Keir* v. *Leeman,* 9 Ad. & E. 395; *Richardson,* C. J., in *Plumer* v. *Smith,* 5 N. H. 554.

But if it be conceded that the original transaction was illegal, it does not follow for that reason that the plaintiffs are precluded from recovery.   Their suit is not brought in affirmance, but in disaffirmance, of that transaction, and requires no aid from it in its support.

The money sued for was not to be expended except upon a certain contingency which did not happen. On the contrary, it is admitted that Towne did not pay out this particular money, or return it to the plaintiffs, but converted it to his own use. Under these circumstances, and upon every principle of natural justice, the plaintiffs are entitled to recover it from his estate; for there is fortunately no rule of law which requires that the conversion of trust funds (no matter for what purpose they may be held) should be encouraged by way of estoppel. On the other hand, the policy of the law is, that he who has the money of another shall not be permitted to keep it. Therefore, when the securities were obtained, and Towne's agency thereby terminated, the law created a promise to refund the unexpended balance in his hands to the plaintiffs; and on such implied promise this suit is maintainable.

And adopting even the defendant's theory, that the money was knowingly advanced by the plaintiffs for an illegal purpose, he cannot be permitted to retain the benefit which in his representative capacity he seeks to derive from the wrongful act of his intestate; for it is consonant to the letter as well as to the spirit of the law, that, as such alleged purpose was not fully executed, there was a *locus pœnitentiæ* as to the unexpended balance of the money of which the plaintiffs might legally and properly avail themselves. 2 Com. Cont. 109 ; *Perkins* v. *Eaton*, 3 N. H. 152 ; 2 Par. Cont. (5th ed.) 746, and cases cited ; *Vischer* v. *Yates*, 11 Johns. 23 ; *Hastelow* v. *Jackson*, 8 Barn. & Cr. 224 ; *Bousfield* v. *Wilson*, 16 M. & W. 185 ; *Farmer* v. *Russell*, 1 Bos. & Pul. 296 ; *McKee* v. *Manice*, 11 Cush. 357 ; *Fisher* v. *Hildreth*, 117 Mass. 562, 563 ; Chit. Cont. (6th Am. ed.) 637, 638, and cases cited ; *Sampson* v. *Shaw*, 101 Mass. 145.

*Exceptions overruled.*

SMITH, J., did not sit: the others concurred.