## JEFFERSON v. BURHANS.

### (Circuit Court of Appeals, Eighth Circuit. April 4, 1898.)

### No. 1,004.

1. EVIDENCE—RELEVANCY—REAL-ESTATE SALES.
   In an action by a real-estate dealer to recover on an express contract, whereby defendant agreed to pay him a certain percentage of the proceeds of sales, in consideration of services to be rendered in clearing the title, putting the property in marketable condition, and effecting sales, evidence as to the customary commissions for making sales of property is irrelevant.

2. ILLEGAL CONTRACTS—RIGHT OF ACTION.
   Defendant cannot take advantage of the fact that the contract sued on is illegal, without pleading that defense, except when the contract itself, or the testimony offered to establish its existence or to support some other issue, discloses the illegality.

3. SAME—CONFIDENTIAL RELATIONS—INDEPENDENT CONTRACT.
   J., having made a valid purchase of certain lands from M., and received a conveyance thereof which M. could not impeach, entered into an agreement with B. whereby B. undertook to perfect the title to said lands, and resell the same on account of J. for a certain per cent. of the gross proceeds of the sale. In a suit by B. against J. to recover the sum due under said contract for perfecting the title and reselling the land, *held*, that J. could not interpose the defense that B. had acted as a broker for M. in negotiating the first sale by M. to J., and for that reason might be called upon by M. to

account to him for the profit which he had realized in perfecting the title and reselling the land for account of J., inasmuch as the agreement between J. and B. was an independent and valid agreement, and inasmuch as M. might never call upon B. to account for his alleged breach of duty.

## In Error to the Circuit Court of the United States for the District of Minnesota.

This suit was brought by Ira W. Burhans, the defendant in error, against Rufus C. Jefferson, the plaintiff in error, to recover the sum of $16,545, together with a large amount of interest thereon, which was alleged to be due from the defendant to the plaintiff on account of services rendered in perfecting the title to, and in selling, certain real property which had been purchased by the defendant. The complaint which was filed in the circuit court alleged, in substance, that in September, 1889, the plaintiff below was a dealer in real estate at the city of Superior, county of Douglas, state of Wisconsin; that the defendant was at the same time a man of large means, residing at St. Paul, in the state of Minnesota; that on the 21st day of September, 1889, the plaintiff proposed to the defendant that if the latter would advance $15,000 in cash for the title to certain property in the complaint described, and pay to the plaintiff 30 per cent. of the proceeds of the sale thereof, as each lot or tract was sold, and give to the plaintiff the entire control of said property, that the plaintiff would, on his part, cause the title to said property to be vested in the defendant, and would remove certain liens and incumbrances therefrom, so that the property would be marketable, and make sales thereof at the earliest time practicable, and pay over the proceeds of all the sales to the defendant; that the defendant accepted said proposition, and advanced said sum of $15,000, whereupon the title to the property was obtained and conveyed to the defendant, and that the plaintiff thereafter procured the release of a large number of claims and liens against said property, and caused an abstract of title to said property to be made out, and advanced and paid out of his own funds, in carrying out his part of the contract, the sum of $2,400; that he thereupon proceeded to sell and dispose of said property in accordance with his undertaking so to do; that, for the property so sold, the defendant received in the aggregate the sum of $55,150, whereby he became indebted to the plaintiff in the sum of $16,545, being 30 per cent. of the proceeds of the sale. The answer which was filed by the defendant below to the aforesaid complaint contained, in substance, the following allegations: First. That, under the agreement between the plaintiff and the defendant which was referred to in the complaint, the plaintiff was to receive 30 per cent. of the net profits of the transaction therein set forth, after the defendant below had been reimbursed the sum of $15,000 expended by him in purchasing the property, and all other expenses and disbursements for taxes, etc., together with interest thereon at the rate of 8 per cent. per annum from the date of such expenditures. Second. That one James Kasson was jointly interested with the plaintiff and the defendant in the purchase of the property in question, and that said Kasson was a necessary party to the suit. Third. That the amount due to the plaintiff on account of the transaction set forth in his petition was not the sum of $16,545, as alleged, or any sum whatever, other than a sum not exceeding $8,000; that is to say, 30 per cent. of the net profits realized from that portion of the property purchased that had been sold. The answer further alleged, by way of a separate defense, that the parties plaintiff and defendant, together with said James Kasson, had been jointly interested in several other real-estate speculations, all of which were particularly described in the answer; that in each and all of said transactions, together with the one described in the plaintiff's complaint, the plaintiff and the defendant and said James Kasson had been mutually interested as partners. In view of this fact, the answer contained a prayer that said partnership might be wound up; that the plaintiff's suit might be consolidated with another suit which had been brought by the defendant and said James Kasson against the plaintiff to obtain a liquidation of the partnership affairs, and an equitable distribution of the partnership assets. The plaintiff filed a reply denying the new matter contained in the answer. The trial below was to a jury, and resulted in a verdict and judgment in favor of the plaintiff, for the sum of $23,564.02, including interest. To reverse said judgment, the defendant below sued out the present writ of error.

W. P. Warner (Owen Morris, Harris Richardson, and C. G. Lawrence, on brief), for plaintiff in error.

John B. Sanborn and George P. Knowles (E. P. Sanborn, on brief), for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The record in this case does not contain the court's charge to the jury, nor all of the evidence. The only questions, therefore, which are presented for our consideration, are those relating to the admissibility of certain evidence, and these will be considered in their order.

It is urged at considerable length by counsel for the plaintiff in error that the trial court erred in refusing to permit his client to answer the following question, "Do you know what the usual commission for real-estate agents who handle and sell property is?" and in refusing to allow counsel to show the usual commissions charged for the sale of real property at the city of Superior, Wis., and elsewhere. Concerning this exception, it is to be observed that the suit was founded upon an express contract, whereby, as the plaintiff below claimed, the defendant had agreed to pay him 30 per cent. of the proceeds received from the sale of certain real property, in consideration of certain services to be rendered by the plaintiff, which consisted, not only in negotiating sales of the property in question, but in removing clouds, liens, and incumbrances therefrom, so as to render the property marketable. The offer of proof which was made was not an offer to show that at the city of Superior, at the time of the transaction in question, it was customary for real-estate agents to charge a certain commission for such services as the plaintiff had agreed to perform and had in fact rendered; but the offer was, on the contrary, to show the customary charge for selling property. Even if we were prepared to concede that, in a suit upon an express contract to pay a given compensation for certain services, it is competent for a defendant to show that the compensation alleged to have been promised for the services in question was in excess of the usual charge, for the purpose of creating a probability or a presumption that no such rate of compensation was in fact promised, nevertheless that concession would not establish the admissibility of such evidence as was offered in the case at bar. The offer, in any event, should have been to prove the existence of a standard rate of compensation for such services as the plaintiff had rendered, and what such rate was. The proof which was offered had no legitimate tendency to create a presumption that the plaintiff's version of the contract was erroneous, especially as both parties agreed that the contract between them contemplated the payment of an unusually large commission, amounting to 30 per cent. The evidence under consideration, as we think, was properly rejected.

An exception was saved to the action of the trial court in refusing to permit the defendant below to show that the plaintiff had discounted at a bank in West Superior, Wis., certain notes that had been

received by him on account of the sale of some of the real property in controversy. We are not able to admit, however, that prejudicial error can be predicated of such action. The contract alleged in the complaint simply bound the plaintiff to turn over the proceeds of all sales to the defendant, "at the earliest time practicable." No complaint was made by the defendant that he had not received the proceeds of all sales that had been made by the plaintiff, and if, in some instances, notes had been received and discounted, and the proceeds thereof paid to the defendant, such action would seem to have inured to the defendant's advantage, rather than to his disadvantage. If, at the time this offer of proof was made, anything had occurred during the progress of the trial which rendered the proof relevant or competent, such fact is not disclosed by the present record.

It is further assigned for error that the trial court erred in rejecting the depositions of two witnesses, to wit, Joseph McQueen and John McQueen, which were offered in behalf of the defendant. These depositions had a tendency to establish, in substance, the following facts: That the property to which this controversy relates, in September, 1889, and for some years prior thereto, belonged to the heirs of one John McQueen, deceased, who resided in the state of Alabama; that in the year 1887 the law firm of Burhans & Perkins, of which the plaintiff below was a member, had been employed to act as agent of said heirs to make an abstract of the title to said property, to pay the taxes thereon, and to oversee the same generally; that in September, 1889, two of said heirs, being the witnesses above named, came to the city of Superior for the purpose of negotiating a sale of the property for cash; that they conferred with the plaintiff, Burhans, relative to its value, and were advised that it could possibly be sold for from eighteen to twenty thousand dollars on long time, for small annual payments; that said Burhans advised them that R. C. Jefferson, the defendant below, was at the time buying land in and around Superior as an investment, and that he would see said Jefferson, and propose to him to purchase the property; that an interview was accordingly arranged between the said witnesses and said Jefferson on the succeeding day, at which interview Jefferson offered to buy the property for the sum of $15,000 in cash; that, before accepting said offer, they conferred with the plaintiff, Burhans, and inquired of him whether the price offered was the reasonable value of the property; that, in reply to such inquiry, they were advised by said Burhans that $15,000 in cash was, in his opinion, a reasonable price for the property, and all that it could probably be sold for, for cash; that, in reliance on such statement, the property was eventually sold by the McQueens to the defendant on the terms proposed; and that, for negotiating the sale in question, they paid the plaintiff a commission amounting to some $700, and were not aware that he was interested to any extent with the defendant, Jefferson, in the purchase of the property. The contention is that these depositions should have been admitted in evidence for the purpose of showing that the contract in suit was illegal and void, although no plea to that effect was contained in the defendant's answer.

It is doubtless true that when the contract upon which a plain-tiff sues, as alleged in his complaint or as proven on the trial, appears to be either immoral, illegal, or opposed to public policy, it will not be enforced, although the defendant fails to object to its enforcement on those grounds either by plea, demurrer, or otherwise. No court will lend its aid to enforce an agreement which, as pleaded, appears to be immoral or illegal, or which is shown to be of that character by evidence which is properly introduced in the course of the trial, in support of any issue that is raised by the pleadings. But if it appears from the terms of a contract, as set forth in a pleading, that it is an agreement such as the parties thereto had a perfect right to make, then it is necessary to plead the existence of such extrinsic facts as the defendant may intend to rely upon for the purpose of establishing that the contract is tainted with illegality, and is for that reason void. When the validity of an agreement has not been challenged by a proper plea, and, as pleaded, it is open to no objections on the ground of public policy or otherwise, and the fact that such objections exist is not disclosed by the evidence offered either to prove or disprove the making of the agreement, then the defendant should not be allowed to prove extraneous facts for the sole purpose of impeaching it. Expressing the same idea in a different form, it may be said that a defendant cannot take advantage of the fact that a contract which he has entered into is illegal, without pleading such defense, except in those cases where the contract itself, or the testimony offered to establish its existence or to support some other issue, shows that it is illegal. Wight v. Rindskopf, 43 Wis. 344, 348; New York Central Ins. Co. v. National Protection Ins. Co., 14 N. Y. 85, 89; Sampson v. Shaw, 101 Mass. 145, 149; Williams v. Insurance Co., 54 N. Y. 577, 581; Hanauer v. Woodruff, 15 Wall. 439.

In the case at bar, the contract in suit, as set forth in the complaint, does not create a suspicion of fraud or illegality. It is an agreement such as the parties thereto had an undoubted right to make. Neither does the testimony relative to the terms of the agreement, which is preserved in the bill of exceptions, disclose that the agreement was in any respect unlawful. The only controversy that appears to have arisen at the trial, relative to the nature of the agreement, was whether the defendant below had agreed to pay the plaintiff a commission of 30 per cent. on the gross sum realized from sales of the property in question, for his services in perfecting the title thereto and selling it, or a commission of 30 per cent. on the net sum which the defendant might realize after deducting the cost of the property, interest thereon, and expenses. The testimony of the respective parties was addressed to this issue, it being the only one that was raised by the pleadings which concerned the terms of the agreement, and we are unable to discover in the evidence relative to this issue any fact which in itself would warrant a court in holding that the contract was unlawful and void. We are of opinion, therefore, that the defendant was not entitled to read the depositions of the McQueens, and that the trial court properly sustained an objection thereto. These depositions

had no tendency to show whether the defendant had promised to pay a commission of 30 per cent. on the gross or the net proceeds of the sale, which was the sole question in controversy so far as the contract was concerned, and they had no relevancy to any other issue that was raised by the pleadings. If, as counsel for the defendant below contends, they were offered for the ulterior purpose of showing that the plaintiff below had sustained such a relation to the McQueens that he was incapacitated to make the contract in suit, without their consent, then it is clear, we think, that that was a defense which should have been pleaded before evidence to establish it was admissible.

From another and different point of view we have reached the same conclusion, last announced, that the depositions were properly excluded. Viewing the depositions in the light most favorable to the defendant, it may be conceded that they contained some evidence tending to show that the plaintiff below occupied such a confidential relation to the McQueens at the time of their conveyance and sale of the property in question to the defendant, Jefferson, that they may be entitled to require the plaintiff to account to them for whatever profit he subsequently realized by virtue of his contract with the defendant, which he is now seeking to enforce. By this remark, however, we would not be understood as expressing a definite opinion on that question, or as prejudging any controversy which may arise in the future. The fact, however, if it be a fact, that the McQueens have a cause of action against the plaintiff as their agent, for an alleged breach of duty, does not render the contract between the plaintiff and the defendant illegal and void. That contract stands upon its own footing, and rests upon independent considerations. The depositions do not show that the McQueens are, or that they ever were, entitled to avoid their conveyance to the defendant, Jefferson, either on the ground of fraud or for other reasons, while the defendant's own testimony relative to his dealings with the McQueens shows that he was an innocent purchaser for value, and is entitled to hold what he in good faith acquired. We fail to perceive, therefore, how the defendant can take advantage of an alleged fraud said to have been perpetrated by the plaintiff on third parties, in which the defendant himself was in no wise concerned, as an excuse for the nonperformance of his own agreement, which was entirely valid. It may be that the McQueens will elect to ratify the acts of their agent, or, at least, that they will not deem it best to complain of his alleged breach of duty. Whether they shall do so or not rests with them to determine, and, as the acts in question are clearly subject to ratification, it is not within the power of the defendant to control their action in that behalf, or to litigate with the plaintiff questions which they may not think proper to litigate.

Two other exceptions were saved to the action of the trial court in refusing to permit two questions to be answered, but they are not deemed to be of sufficient importance to merit special notice.

It is urged, finally, that the plaintiff was not entitled to sue on the contract between himself and the defendant, because all the property

in controversy had not been sold when the suit was commenced, and that the verdict is, in any event, erroneous, because it includes interest from the dates of the several sales. With reference to these points, it is only necessary to say that, if either was well taken, they are not presented by the record in such a form that they are open to review. The bill of exceptions does not show that either proposition was suggested to the trial court. The judgment below is therefore affirmed.