[No. 3146. June 8, 1927.]

STATE v. CAPITAL BANK et al.

Appeal of NEW ENGLAND NAT. BANK of KANSAS CITY, MO.

[257 Pac. 993.]

SYLLABUS BY THE COURT

1. An action cannot be maintained on a contract that is illegal or against public policy, where both parties are equally culpable.

2. A contract in whose consideration and performance nothing illegal or against public policy inheres may be enforced although it may incidentally aid one in evading or violating the law, the incidental transaction tainted with illegality not being required to be proven to enable the plaintiff to make out his case.

Appeal from District Court, Santa Fe County; Holloman, Judge.

Action by the State against the Capital City Bank, in which the New England National Bank of Kansas City, Mo., presented a claim as a general creditor against the receiver of the bank. From a judgment denying the claim, the claimant appeals. Reversed and remanded, with directions.

See, also, 246 P. 899.

Mechem & Vellacott, of Albuquerque, for appellant.

E. R. Wright, of Santa Fe, for appellees.

[1] 13CJ p. 493 n. 18. [2] 13CJ p. 502 n. 57; p. 503 n. 58.

OPINION OF THE COURT

RYAN, District Judge. [1] This is an appeal from the final judgment of the district court for Santa Fe county denying a claim in the principal sum of $34,-889.06, asserted by New England National Bank of Kansas City as a general creditor against the receiver of the Capital City Bank of Santa Fe.

The New England National Bank presented its claim to the referee of the insolvent bank, and upon the rejection of the claim prosecuted, by stipulation, an original action at law in the district court of Santa Fe county for money lent.

The claim of the New England Bank is upon two notes. One, for convenience, called the Jaramillo note, originally in the sum of $30,000; the other, for convenience, called the Trujillo note, originally in the sum of $26,005.55. There was subsequent substitutions and renewals of these notes, but such transactions do not affect any of the matters here involved, so, for the sake of clarity, we refer to the original notes only. The Capital City Bank of Santa Fe, a state institution, was adjudged insolvent on the 14th of July, 1923, and its affairs proceeded to liquidation by the receiver under the provisions of the general corporation insolvency act.

With reference to the Jaramillo note, the petition above referred to, filed in the district court, alleges that on or about the 26th of December, 1916, the petitioner, called herein the New England Bank, lent to the Capital City Bank, called herein the Santa Fe Bank, at the request of the latter and to be used in the latter's business, the sum of $30,000, under an agreement between the parties that the New England Bank should carry for the Santa Fe Bank and hold as security for said loan a certain indebtedness due from Jaramillo to said Santa Fe Bank in the sum of $30,000; that this indebtedness was renewed from time to time as evidenced by promissory notes signed by Jaramillo; that payments were from time to time made on such indebtedness, and the balance due re-

newed, and at the time of the closing of the Santa Fe Bank and the appointment of the receiver, there was owing and unpaid $14,872.60, with interest; and, further, that by the custom and trade usage by bankers, well known to petitioner and defendant and to the banking community at large sufficiently to charge all parties with notice thereof, the agreement to carry such note for defendant meant and was understood to mean that petitioner would loan and advance the face amount of said note to defendant to enable it to use such amount of cash and hold the note as security therefor, and that at maturity said note should either be paid off by defendant or collected by it from the principal maker and the amount remitted or credited by petitioner and the note be taken up by defendant.

The same allegations were made with reference to the Trujillo note, except that with regard to it the money was lent and advanced on September 22, 1927, and the amount of the loan was $26, 005.55, and the amount due at the time of insolvency was $20,016.46.

The defendant receiver of the Santa Fe Bank denied all the facts alleged as above set forth, so far as they had to do with the existence of the claim, and pleaded by way of affirmative defense that the capital stock of the Capital City Bank was $50,000, and that it had a book surplus of $10,000; that in the conduct of its business it was governed by the provisions of chapter 67 of the Session Laws of 1915 and the various amendments thereto; that during all of said time the maximum amount said bank was authorized to lend to any person, firm or corporation, was the sum of $12,-000; "that on or about the 26th day of September, 1916, the said Capital City Bank then and there having loaned to one Venceslado Jaramillo the full amount of $12,000, and said amount, being the maximum amount which under the laws of the state of New Mexico the said Capital City Bank was entitled to loan to the said Venceslado Jaramillo, and the said Venceslado Jaramillo desiring to obtain additional funds and credit from the said Capital City Bank, the

said Capital City Bank made and entered into an agreement with the said New England National Bank of Kansas City to obtain for the said Venceslado Jaramillo the additional sum of $30,000, the said $30,-000 being the amount referred to in the said amended petition of the said New England Bank; that at the time of obtaining said sum of $30,000 for the said Venceslado Jaramillo from the said New England National Bank, it was understood and agreed by and between the said New England National Bank and the said Capital City Bank that the said note and obligation of the said Venceslado Jaramillo representing said sum of $30,000 while taken in the name of said the Capital City Bank was to be indorsed to the said New England Bank by the said Capital City Bank without recourse, and that said note and all renewals thereof down to some time in the year 1921 were so indorsed to the said New England National Bank without recourse; "that at the time of so receiving said note and collateral security attached thereto from the said the Capital City Bank, the said New England Bank well knew that the Capital City Bank could not carry the said paper, note, and obligation of the said Venceslado Jaramillo as a direct loan from the Capital City Bank, because same was an excessive loan and in excess of the legal amount which said Capital City Bank was authorized to loan to the said Venceslado Jaramillo, and at the time of so receiving and accepting said note of the said Venceslado Jaramillo, indorsed without recourse as aforesaid, the said New England National Bank well knew that the purpose and intent of the said Capital City Bank in so indorsing the same without recourse to the said New England National Bank was for the purpose and with the intent of avoiding the provisions of the New Mexico statutes above referred to, and to enable the said the Capital City Bank to avoid reporting to the bank examiner of the state of New Mexico the said obligation of Venceslado Jaramillo as an obligation and indebtedness of the said the Capital City Bank."

The same affirmative defense is set forth relative to the Trujillo note, and the defendant also alleges with reference to the renewals and substitutions above referred to "that the several renewals were all indorsed without recourse and with a similar purpose and with a similar intent and with a similar knowledge on the part of said New England National Bank to avoid reporting the same as an indebtedness and obligation of the said the Capital City Bank"; and so the defendant charges:

"This receiver further alleges that all of said indebtedness now claimed by the New England National Bank against your receiver was contracted in the manner hereinbefore alleged and not otherwise; that the said New England National Bank at the time of making said original loans and at the time of each renewal and substitution thereof well knew that said loans were excessive loans and in excess of the legal and lawful amount that the said Capital City Bank could loan under the laws of the state of New Mexico to any one individual, copartnership, or corporation, and well knew that the manner of making said loans and indorsing the paper and obligations representing said loans to the said New England National Bank was to enable the said Capital City Bank to avoid reporting the same as obligations of said Capital City Bank, in the reports required by the statutes of the state of New Mexico, to be made to the state bank examiner."

Because of these things the defendant, the receiver of the Capital City Bank, concludes:

"That the New England National Bank in now presenting its claim on account of said indebtedness as against the receiver of the Capital City Bank is estopped to set up, claim, or contend that by reason of any custom existing among bankers or by reason of any written agreement or oral understanding or guarantee made by the said Capital City Bank the said alleged indebtedness is an obligation against the assets of the said Capital City Bank."

After the conclusion of the trial had upon the issues framed, estoppel as above set forth being the principal issue, the court made numerous findings of fact and these conclusions of law:

"(1) That the secret arrangement made between the Capital City Bank and the New England National Bank, whereby the Capital City Bank guaranteed verbally, through J. B. Herndon, its president, the payment of the Jaramillo note, and later the payment of the Danner & Hughes note,

being made and entered into with full knowledge on the part of the New England National Bank that the indorsement of said notes without recourse was made for the purpose of enabling the Capital City Bank to evade the banking laws of the state of New Mexico, and with full knowledge on the part of the New England National Bank that the Capital City Bank thereafter would not report the said notes as a liability of the bank, makes the New England National Bank a party to said plan and conspiracy to violate the banking laws of the state of New Mexico.

"(2)    This being an equitable proceeding, and the New England National Bank having made the loans upon the Jaramillo and Danner & Hughes notes with full knowledge that said loans were both in excess of the legal amount which could be loaned by the Capital City Bank, and having full knowledge at the time of making said loans that the indorsement of same 'without recourse' was a mere subterfuge to enable the Capital City Bank to violate the banking laws of the state of New Mexico, and with full knowledge thereafter that the Capital City Bank did not report the said notes as a liability of the Capital City Bank, the court will leave the parties as it finds them, and not aid the New England National Bank by enforcing an agreement made and entered into under the circumstances set forth in the findings of fact herein.

"(3)    That the action of the New England National Bank in failing and refusing to disclose to the state of New Mexico in June and July, 1922, and again in December, 1922, as set forth in the findings of fact, estops New England National Bank from now asserting against the receiver any claims for or on account of an unpaid balance on either the Jaramillo or Danner & Hughes notes.

"(4)    That the claim of the New England National Bank should be disallowed."

It is not essential to set forth fully  or  to analyze in detail the evidence upon which the court made the findings of fact from which the conclusions of law above set forth were deduced.

There is little dispute concerning the evidence and only one issue of law predicable upon it—that is, whether the facts constituted an estoppel as claimed by the receiver.   These facts, however, were emphasized and in effect admitted:  That the excessive loan of the Santa Fe Bank to Jaramillo was made prior to the negotiations between it and the New England National Bank, which latter bank had nothing to do whatsoever with the making of the excessive loan.

This the trial court found specifically, viz:

"This Jaramillo loan had been made and the note there·
for taken by the Capital City Bank prior to any negotia-
tions with the New England National Bank for the car-
rying of it by the latter, and there is no evidence that
the New England National Bank had any knowledge of
the loan to Jaramillo, prior to the application to it for
the loan here involved."

There was no similar finding with reference to the
Trujillo note, but the evidence discloses that the New
England Bank was not in any way involved with the
excessive loan made to Trujillo by the Santa Fe Bank;
that the Santa Fe Bank as a result of the negotiations
with the New England Bank secured $30,000 on the
Jaramillo note, and $26,005.55 on the Trujillo note,
and used these amounts in its banking business; that
as between the two banks the liability of the Santa
Fe Bank to the New England Bank for these loans
in the amounts stated above was always fully under-
stood and clearly acknowledged; that the transaction
between the Santa Fe Bank, represented by J. B.
Herndon, its president and executive, by P. G. Wal-
ton, its vice president and executive officer, resulted
in an agreement whereby the New England Bank
carried both notes—that is, the Jaramillo note and the
Trujillo note, for the use and benefit of the Capital
City Bank—the term "carry" meaning, as understood
by both parties and in banking circles, that the New
England Bank would take the paper and lend the
money to the Santa Fe Bank, which bank would be ul-
timately liable, that is, would pay the full amount
due to the New England Bank in case the makers of
the notes did not pay it; that these notes were in-
dorsed by the Santa Fe Bank without recourse, so
that they would not have to be entered as loans or
as bills payable or as rediscounts in its statements;
that the purpose of the Santa Fe Bank in this regard
was known at the time of these negotiations to the
New England Bank; that the state bank examiner of
New Mexico knew during the month of July, 1922,
that the effect of the transaction involving these notes
between the two banks was such as to make the Santa

Fe Bank liable on the notes by reason of what he referred to as a "gentlemen's agreement" to pay ultimately notwithstanding the indorsement without recourse.

Argument was made that there is no evidence in the case that the New England Bank knew the Santa Fe Bank did not intend to report these loans as liabilities. We think that though the executive officers of both banks deny that reference was made to such intent in their conversations at Kansas City when the loans were made, and we have no doubt their testimony in this regard reflects the true facts, the purpose of the Santa Fe Bank complained of was so obvious as not to need express disclosure; undoubtedly the New England Bank was aware of the reason the Santa Fe indorsed the paper without recourse while contracting otherwise. Appellant also contends that the forms provided by the state bank examiner did not contemplate a report by the Santa Fe Bank of the transaction here involved as it in fact existed, and that there was no duty resting upon it to report it, and, further, that section 37, c. 67, of the session Laws of 1915, as amended by section 22, c. 120, Session Laws of 1919, did not require that the loan be reported. We omit comment on these contentions, since it is apparrent that even though viewed adversely to the contention of the appellant, its asserted adherence to the banking regulations of the state exerts no important influence on the real merits of the case as presented to us; and we proceed to determine whether upon the admitted facts the trial court was correct in holding that the New England Bank was estopped in asserting its claim against the receiver of the Santa Fe Bank.

It is plain that so far as the loans themselves are concerned no element of the transactions between the two banks is affected with any shadow of illegality. In substance, the contract was simply one by which money was lent on the one hand and borrowed on the other; and both parties in all the implications

of their mutual agreements and in the performance of them were clearly within the letter and the spirit of the law. The illegality and hence the claimed unenforceability of the contract rests on the fact that one of the parties, the Santa Fe Bank, intended at the time the contract was made and to the knowledge of the other party to omit setting forth the true nature of it in its published statement, thereby failing to conform to the laws and banking regulations of the state of New Mexico. The illegality is, therefore, in the publication of the contract itself. This statement fails to notice the fact that the Jaramillo and Trujillo notes were excessive loans. This can have nothing to do with the legality of the transaction. Banking paper representing executive loans is just as validly the subject of negotiations with another bank as other paper is. Aldrich v. Chemical National Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611; Jones v. New York ndemnity Co., 101 U. S. 622, 25 L Ed. 1030; Union National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Union Gold Mining Co. v. Rocky Mountain National Bank, 96 U. S. 640, 24 L. Ed. 648; Nelson v. Leiter, 190 Ill. 414, 60 N. E. 851, 33 Am. St. Rep. 142.

[2] The question here presented is then simply this: Was the contract illegal, against public policy, and therefore unenforceable because the paper involved was indorsed "without recourse" for the purpose on the part of the Santa Fe Bank of evading or violating the New Mexico banking laws, and because the New England Bank knew merely of such purpose at the time the loan was negotiated? The question has been very frequently considered in judicial decisions, and the law is firmly settled that such a contract is enforceable. Ruling Case Law says (6 R. C. L. 696):

"Where there is no moral turpitude in the making or in the performing of the contract, the mere fact that an agreement, the consideration and performance of which are lawful, incidentally assists one in evading a law, or public policy, is no bar to its enforcement, and that if the contract has been performed by the promisee, it is no defense that the promisor knew that the agreement

or its performance might aid the promisee to violate the law or to defy the public policy of the state, when the promisor neither combined nor conspired with the promisee to accomplish that result, nor shared in the benefits of such violation."

In support of this text, see Jefferson v. Burhans (C. C. A.) 85 F. 949; Kansas City Brick Co. v. National Security Co. (C. C. A.) 167 F. 496; Armstrong v. Toler, 11 Wheat. 258, 6 L. Ed. 468; Armstrong v. Bank, 133 U. S. 433, 10 S. Ct. 450, 33 L. Ed. 747; Waterbury v. McKinnon (C. C. A.) 146 F. 737; Ingraham v. National Salt Co. (C. C. A.) 130 F. 676; Taylor v. North Star Gold Min. Co., 79 Cal. 285, 21 P. 753; Savings Bank v. Pacific Railroad Co., 117 Cal. 332, 49 P. 197; Trust Co. v. Crescent Loan Co., 27 Ind. App. 451, 61 N. E. 688, 87 Am. St. Rep. 257; Wright v. Hughes, 119 Ind. 324, 21 N. E. 907, 12 Am. St. Rep. 412; Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Mechanics' Insurance Co. v. Hoover Distilling. Co. (C. C. A.) 182 F. 590, 31 L. R. A. (N. S.) 873

To the same effect is the text of Corpus Juris (13 C. J. 502):

"An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration, or if plaintiff will not require the aid of the illegal transaction to make out his case."

The note to the above text lists citations from practically every state in the Union, from the federal courts and the United States Supreme Court.

The publication of the transaction between the two banks as a liability of the Santa Fe Bank was wholly extrinsic and incidental to the contract upon which the Santa Fe Bank's obligation to pay was founded, and in no respect was the New England Bank required to have the aid of or enforce the element of the contract tainted with illegality—that is, the publication of it—to make out its case.

Bank v. Smith, 17 N. M. 166, 125 P. 632, cited by appellee, is not in point, but, on the contrary, is in

harmony with what we have above stated. The court there said that the contract under consideration "was illegal, in that its consideration was grounded upon the violation of a penal and prohibitory statute of the United States." Further, the distinction was also made that the refusal of courts to enforce illegal contracts referred to such contracts as had to be proven of this character in order to maintain the cause, quoting with approval to this effect McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117:

"No court will lend its assistance in any way towards carrying out the terms of an illegal contract. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights springing from such contract."

Particularly lucid and convincing to the point here involved is the argument of Judge Sanborn in writing the opinion of the court, United States Circuit Court of Appeals, Eighth Circuit, in the case of Hanover National Bank v. First National Bank of Kansas, reported in 109 F. 421. In the case cited, while the note in question was not indorsed "without recourse," it does appear that the president of the Kansas bank, Sheldon, negotiated with the New York bank for discounting promissory notes for the Kansas bank, and stated that he did not wish to put the name of the Kansas bank on the note to be discounted for the reason that he did not desire to state the bank's indebtedness on account of these notes in the reports to the Comptroller of the bank's financial condition. For this reason he signed the notes individually, and the New York bank agreed to discount with the Kansas bank notes signed or indorsed individually by Sheldon, and the Kansas bank agreed to authorize the New York bank to charge these notes to its account as they matured. The facts in the federal case, therefore, are in effect identical with the facts in this. The court said:

"Another contention of counsel for the bank is that the contract between the two banks is incapable of enforcement, because Sheldon informed the New York bank that

the reason why he wanted to make the agreement without putting the indorsement of the defendant on the paper was that he did not wish to report to the Comptroller and to publish the fact that his bank had procured these rediscounts. It is insisted that this statement of Sheldon when the contract was made injected into it a fatal vice, because it brought home to the New York bank knowledge of the fact that the contract might assist Sheldon in evading or violating the provisions of section 5211 of the Revised Statutes, which requires the presentation to the Comptroller of Currency, and the publication of the reports of the resources and liability of a national bank. But there are several reasons why this position is not ten able. In the first place, the argument is founded on the principle that an action cannot be maintained on a contract that is illegal or against public policy in which both parties are equally culpable. Bartle v. Nutt, 4. Pet. 184, 7 L. Ed. 825; Trist v. Child, 21 Wall. 441, 22 L. Ed. 623; Marshall v. Railroad Co., 16 How. 314, 14 L. Ed. 953; Hinnen v. Newman, 35 Kan. 709, 12 P. 144. But this rule has no application to an agreement which has no consideration, and which requires the performance of no act that is either illegal or against public policy; and that is the character of the contract here in issue. Neither the intention of Sheldon not to report the rediscounts nor his statement of that intention constitutes any part of the consideration of this agreement. The only consideration for the advances of the New York bank was the discounts and the interest it would obtain, while, on the other hand, the only consideration for the promise of the Kansas bank was the use of the money it would secure, and the excess of discounts and interest it would earn above those that it would pay. The intent or purpose of Sheldon could not have been a part of the consideration of the agreement, because neither he nor the Kansas bank promised to accomplish that purpose, and there is no evidence that it ever was accomplished. It was at most a mere collateral, incidental, unaccomplished purpose, and could constitute no bar to the enforcement of the agreement. The mere fact that a contract the consideration and performance of which are lawful incidentally assists one in evading a law is no bar to its enforcement. Green. Pub. Pol. p. 538, rule 464; House v. Soder, 36 Tex. 629; Gerhard v. Neese, Id. [36 Tex.] 635; Jefferson v. Burhans, 29 C. C. A. 481, 85 F. 949, 58 U. S. App. 586, 593, 595."

We are able to find no case at variance with what is above expressed.

The third conclusion of law found by the court rests upon different facts than those which we have considered above. In substance it finds that the claimant, New England National Bank, is estopped from asserting its claim against the receiver because

of the character of its answer to the state bank examiner in response to inquiries put to it by that official.

Under date of June 23, 1922, the state bank examiner of New Mexico wrote to the claimant as follows:

"I would be obliged if you would kindly indicate whether or not you are holding the Capital City Bank, Santa Fe, itself liable in any way with the notes of J. W. Danner, $26,250, and F. W. Wood, $42,000, which you are carrying as an accommodation to the bank. Also notes of Messrs. Mardorf and Ormsbee, $7,500, and note of Mr. Mardorf, $14,772.60, secured by note of V. Jaramillo."

Under date of July 14, 1922, the New England National Bank replied to this letter as follows:

"We are in receipt of your letter of July 12th, enclosing copy of your letter of June 23rd. The following notes were discounted for the Capital City Bank as an accommodation. They do not bear the bank's indorsement. The proceeds were placed to the bank's credit and we understand was for their use and benefit."

There were other letters of like tenor. In the first place the reply of the New England National Bank to the inquiry addressed to it by the state bank examiner was not evasive. It stated the substantial facts in such a way that the bank examiner might readily know that it did hold the Capital City Bank liable on the notes in question, even though it did not answer categorically the precise question put to it by the state bank examiner, viz., whether they held the Capital City Bank liable on the notes in question. See Aldrich v. Chemical National Bank, 176 U. S. 618, 20 S. Ct. 498, 44 L. Ed. 611. That the state bank examiner was not misinformed by the answer given is evident from the fact that subsequently to his receiving these letters he immediately called the Capital City Bank to task for its having omitted to publish in its reports these items as rediscounts or as liabilities of the bank. The facts with regard to this particular matter fail to establish an estoppel. Dye v. Crary, 13 N. M. 439, 85 P. 1083, 9 L. R. A. (N. S.) 1136.

We find that the trial court was in error in concluding that the claimant, New England National Bank, was estopped from asserting its claim against the receiver.

The order denying the claim of New England National Bank is reversed and the cause remanded, with directions to allow the claim of the appellant; and it is so ordered.

BICKLEY and WATSON, JJ., concur.