## Hartford Fire Insurance Company v. F. Cannon & Co.

### Decided June 15, 1898.

**1. Fire Insurance—Waiver of Appraisement.**

An appraisement under an insurance policy is waived where there is no disagreement between the insured and the agent of the company except as to the manner of arriving at the amount of loss, and a tacit agreement is made as to everything except the amount, and the company makes no objection when proof of loss is sent to it, but retains it without objection.

**2. Same—Cost of Replacing Property.**

An insurance company issuing a policy on goods to the manufacturer, providing for payment of what it will cost the insured to replace them in case of loss, is liable for the market value of such goods at the date and place of the loss, and not merely the cost of manufacturing the goods and sending them to the place where the loss occurred.

**3. Same—Harmless Evidence of Value.**

Admission of evidence that the bagging covered by the insurance policy in suit was preferred in other places than Galveston to that made by other companies is harmless to defendant where the jury found Galveston prices.

**4. Same—Cumulative Evidence of Waiver.**

Error in admitting incompetent evidence of a waiver of appraisement in an action on an insurance policy is harmless where such waiver is shown by competent evidence.

Appeal from Galveston. Tried below before Hon. W. H. Stewart.

*William Thompson* and *Harris, Etheridge & Knight,* for appellant.

*Scott, Levi & Smith,* for appellees.

Fly, Associate Justice.—Appellees sued for and recovered, before a jury, the sum of $18,000, the amount for which appellant had insured certain bagging in the city of Galveston.

We find as facts, that the insurance company had insured bagging held by appellees for the Ludlow Manufacturing Company amounting in actual value to more than all the insurance thereon, and that the same was destroyed by fire, and that appellant had insured it in the sum of $18,000, and its pro rata of the actual loss amounted to that sum.

A companion case to this has been recently decided by the Court of Civil Appeals of the First Supreme Judicial District, and the same is referred to for a full statement of the facts, which are the same as in this case. Virginia Fire and Marine Insurance Co. v. Cannon & Co., 18 Texas Civil Appeals, 588. The same is also referred to for discussion of the points raised in this case.

The first assignment of error complains of the action of the trial court in overruling an exception to that portion of the petition which set up a waiver of the appraisement clause. The allegation was sufficient and the court properly overruled the exception. The case cited by appellant, Insurance Company v. Brown, 82 Texas, 631, has no bearing upon the point in issue.

There was no error in admitting the testimony of which complaint is made in the ninth, tenth, eleventh, and twelfth assignments of error. The testimony was elicited on the cross-examination of D. E. Grove, the general agent of appellant. The evidence was in point under the plea of waiver of appraisement. It does not appear that appellant was injured by the testimony, because provision is made in the policy only in case it was required, and under the facts there was neither demand nor occasion for appraisal. The evidence, independent of the testimony to which objection was urged, showed a waiver of appraisement on the part of appellant, and no injury could have been inflicted by its admission. When the agent of appellant and appellees met for the purpose of adjustment of the matters appertaining to the loss of the bagging, there was no disagreement between them on any point except as to the manner of arriving at the amount of loss for which appellant was responsible. An agreement was reached as to the salvage, and there was a tacit agreement as to everything except as to amount. Appellant did not at that time deny its liability for the loss of the goods under the policy as construed by it, and when the proof of loss was sent to it no objection was made, but it was retained without objection until this suit was filed. The circumstances established a clear waiver of appraisement and every other point except as to how the amount of loss should be arrived at.

The contention of appellant is that the amount for which it is responsible within the terms of the policy of insurance is what it actually cost the Ludlow Manufacturing Company, in whose interest the insurance was issued, to manufacture the bagging in Boston, Mass., together with freight from that place to Galveston, Texas, as well as cost of insurance, storage, etc., up to the time of its destruction. On the other hand, it is contended by appellees that the actual value of the goods, not to exceed the cost of replacing them, for which payment is provided in the policy, is the market value of the goods in Galveston at the time of their destruction by fire. While it has been held in a number of cases that the actual value is the market value, that question need not present any difficulty in this case, for the reason that the market value was shown to have been the same that it would cost to replace the goods at the time and place of destruction.

If we understand aright the position of appellant, it is not its con-
tention that the rule as insisted upon by appellees is not the usual one in
arriving at the amount of damages to be assessed against insurance com-
panies, but that under the peculiar facts of this case, where the insured
is a manufacturer of the class of goods destroyed, the actual cost is cost
of manufacturing and conveying to point of sale, for under the same
clause we are considering it is well settled that in ordinary cases the
actual value means the sum of money they would have brought at the
market price at the time and place destroyed.   Fowler v. Insurance Co.,
74 N. C., 89; Mack v. Insurance Co., 2 McCrary (U. S. Cir.), 211;
Fisher v. Insurance Co., 33 Fed. Rep., 544; Insurance Co. v. Studebaker,
124 Ind., 176; Grubbs v. Insurance Co. (N. C.), 13 S. E. Rep., 236;
Clement on Ins., pp. 131, 132; May on Ins., sec. 424; Wood on Ins., sec.
471.   In order to sustain the rule desired by appellant to be applied in
this case, we would be compelled to hold that the rule as to measure of
damages applicable to manufacturers is different from the ordinary rule.
We do not believe this should be done.

A case very similar to this was before the Supreme Court of Michigan,
and in construing the identical clause now under consideration it was
said:  "Counsel for defendant (the insurance company) have in their
brief entered into a very learned discussion of the terms of the policy
to show that the word 'then' used in the clause 'and shall in no event
exceed what it would then cost the insured to repair or replace the same
with material of like kind and quality,' should not be read as calling for
an immediate reproduction of the lumber burned, as it would not be pos-
sible, even by purchase in open market, in the State of Michigan, to re-
place it, and that such a contingency was not in the minds of the parties
at the time of entering into the contract; that the words 'cost of insured'
should not be read with 'the insured' omitted, and that what it might
then cost the insured to replace it would be different for an insured, hav-
ing no stumpage to replace with, and who must buy in general market;
that the business of indemnifying each individual is different,—different
in moral and physical hazard and different in environment."   Mitchell
v. Insurance Co., 52 S. W. Rep., 1017.   This is in effect the position oc-
cupied by appellant in this court.   Replying to the proposition stated,
the Michigan court said:  "We think the word 'then' is significant, and
must be given weight in determining the true intent and meaning of the
contract.   If the defendant's theory of construction be adopted, the word
'then' must be dropped out, and the contract construed as intending to
give to the insurance company the benefit of the time it would take the
insured to replace it or reproduce it,—that is, if the insured had the
means of replacing or reproducing the burned lumber, having timber
from which to manufacture lumber and the mill to manufacture it
with,—then an estimate should be made of that cost as the measure of
damages, though it might take six months or a year to replace or repro-
duce it.   In this sense the words 'replace' or 'reproduce' would be synony-
mous; but the contract can not be construed in that way without doing

violence to the language employed. Clearly it means just what it says, 'what it would then cost the insured to replace it,' and not what it would cost the insured to cut from his own stumpage, manufacture lumber at his own mill, and replace after the delay of cutting, hauling, sawing, piling in the yards, etc. We are unable to agree with the learned counsel for the defendant that the contract is to be construed any differently in this case than as though the plaintiffs had no stumpage of their own, and no mill by which they could manufacture lumber. It means that the plaintiffs had the right, on the date of the fire, to recover from the defendant such an amount of money as it should cost them to replace the lumber, or in other words, the market value of the lumber at the date of the fire." We have quoted so liberally from the above case for the reason that the facts are so similar to those before us, and because our views of the law are therein expressed. The same measure of damages was doubtless in contemplation by the parties when the contract was made as the one ordinarily prevailing, and the contract must be construed as though appellees could not manufacture bagging. There was no testimony that tended to show the value of bagging was enhanced by the destruction of appellees' bagging. The prices which shaped the verdict were those prevailing for a week before the fire.

The testimony to the effect that the bagging of the Ludlow Manufacturing Company was preferred in other places than Galveston to that made by other companies did not injuriously affect the interest of appellant, for the reason that the jury found for the Galveston prices. The witnesses who testified as to the preference, while living in other towns, bought their bagging in Galveston. There was no evidence to support the theory that appellees had entered into a trust to control the market as to bagging, and that the policy was obtained in furtherance of it, and it was not error to refuse to submit such an issue. None of the assignments of error is well taken, and the judgment will be affirmed.

*Affirmed.*