### PHILLIPS v. HOME INS. CO.

(Supreme Court, Appellate Division, First Department.   November 6, 1908.)

INSURANCE (§ 499*)—FIRE INSURANCE—CONTRACTS—AMOUNT OF LOSS.

A fire policy insured a manufacturer of straw hats against loss to his manufactured and unmanufactured stock to the actual cash value of the property, not to exceed what it would cost to replace the same with material of like quality.   A fire destroyed the factory and hats ready for shipment to a buyer.   It would require four months to reproduce the hats, and the factory could not be rebuilt in time to reproduce them for the coming season's trade, and insured could not procure any other mill to produce the goods, nor could he replace them in the market.   *Held*, that insured could recover the actual cash value of the property destroyed, and was not limited to the cost of manufacture.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 499; Dec. Dig. § 499.*]

McLaughlin, J., dissenting.

Submission of controversy under Code Civ. Proc. §§ 1279, 1281, by Jay E. Phillips against the Home Insurance Company.   Judgment for plaintiff.

Argued before McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Frederick B. Campbell, for plaintiff.
Dickinson W. Richards, for defendant.

HOUGHTON, J.   The plaintiff is a manufacturer of straw hats, and the defendant issued to him a policy of insurance, insuring him against loss by fire to his manufactured and unmanufactured stock in the sum of $2,000.   On February 11, 1906, while such policy was in force, a fire occurred by which the plaintiff's factory and contents were destroyed.   A portion of the property so destroyed consisted of a quantity of hats which had been finished, bargained for, cased for shipment, and marked with the buyers' names prior to the fire.   The delivery and shipment of these goods would have commenced the morning after the fire occurred, and would have continued for four months following.   The stipulated facts concede that it would have required four months to reproduce the hats in the condition they were at the time of the fire and that plaintiff's factory could not be rebuilt in time to reproduce the goods for the coming season's trade, and that after diligent effort the plaintiff was unable to procure any other mill to reproduce the goods and was unable to replace them by purchase in the market.   The policy was the standard form, and contained the following provision with respect to ascertaining the loss:

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deductions for depreciation, however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

It is stipulated that the actual cost of manufacture to the plaintiff of that portion of the hats for which defendant is liable was $1,841.95, and that the actual selling price at which plaintiff had made sales on which he was about to make delivery was $1,966.79. There would be no difficulty in deciding the question, and doubtless no controversy, except for the clause of the contract providing that the loss or damage—

"shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality."

Without this clause the actual cash value must be conceded to be the measure of damage. Whatever may be the rule with respect to ordinary manufactured articles, and whether under ordinary circumstances the cost of manufacture under this clause would be the measure of loss, we are of opinion, under the facts as stipulated, that the plaintiff is entitled to recover the actual cash value, and is not limited to the cost of manufacture. Straw hats are not an ordinary staple. Their value depends upon style and finish, and they must be produced for the summer market. In order to reach the retailer in time for the summer trade, they must be manufactured in the fall and winter, so they may come to the hands of the retailer in the spring and early summer. It is conceded the plaintiff could not repair his factory or obtain another in which to reproduce the hats lost by the fire in time for the season's trade, nor could he go upon the market and replace them by purchase. Under the stipulated facts it is impossible to apply the clause of the contract respecting repair or replacement. The plaintiff could neither buy them nor could he again manufacture them in time to be of any value. It cannot be ascertained what it would cost the insured "to repair or replace" the hats "with material of like kind and quality," because they could be neither repaired nor replaced. There is no other mode, therefore, under the contract, of ascertaining the plaintiff's loss, except by taking "the actual cash value" of the property destroyed, which is conceded to be the price at which they were contracted to be sold.

In Frick v. United Firemen's Insurance Company, 218 Pa. 409, 67 Atl. 743, a quantity of whisky of various ages was destroyed by fire, and the policy of insurance contained the same clause as that of the policy under consideration. The question involved was whether the measure of loss was the cost of manufacture or the cash value. Because of the fact that it was impossible to produce whisky of the precise quality and mellowness of that destroyed, which condition added largely to its value, it was concluded that the only practical method of ascertaining the loss was to take the actual cash value. In its decision the court was careful to distinguish it from its former decision in Standard Sewing Machine Company v. Royal Ins. Co., 201 Pa. 645, 51 Atl. 354, where it had limited the loss of sewing machines to the cost of manufacture, deeming the peculiar situation a controlling feature. A like peculiar situation exists under the stipulated facts in this case, and, the goods being impossible of replacement, the plaintiff is entitled to recover the actual cash value, and is not limited to the cost of manufacture.

Judgment is ordered for the plaintiff in the sum of $1,966.79, with interest from the 28th day of March, 1906, with costs.

LAUGHLIN and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting).  The contract in question was one of indemnity only.  13 Am. & Eng. Enc. of Law (2d Ed.) p. 101. Profits may be recovered only when insured as such.  Id. 105; Niblo v. North Am. Fire Co., 1 Sandf. 551; Buffalo El. Co. v. Prussian Nat. Ins. Co., 64 App. Div. 182, 187, 71 N. Y. Supp. 918, affirmed 171 N. Y. 25, 63 N. E. 810.  Upon the facts the plaintiff would be indemnified by the payment to him of $1,841.95, and any greater sum necessarily includes profits.  He was a manufacturer, and his actual loss was obviously what he had expended upon the goods destroyed, and not what he would have realized had he sold them, since his profits would be included in the selling price.  Standard Sewing Machine Co. v. Insurance Co., 201 Pa. 645, 51 Atl. 354; Scottish Union Ins. Co. v. Keene, 85 Md. 263, 37 Atl. 33; Mumford v. Hallett, 1 Johns. 433; Harris v. The Eagle Fire Co., 5 Johns. 368.

It is doubtless true that "actual cash value" is frequently to be construed as equivalent to market value; but that term is used in the policy to limit the liability of the insurer, and the provision that the loss "shall, in no event, exceed what it would then cost the insured to repair or replace the same with material of like kind and quality" shows it was never intended by the use of such words to insure the manufacturer's profits.  The value of an article is ordinarily fixed by its market value, but in the case before us the amount which would indemnify the plaintiff is conceded, and to allow him anything more is simply to allow him the profits which he would have realized, had the fire not occurred.

I am therefore of the opinion that upon the agreed facts the plaintiff is entitled to judgment for the sum of $1,841.95, with interest from the 28th day of March, 1906.