MECHANICS' INS. CO. OF PHILADELPHIA et al. v. C. A. HOOVER DISTILLING CO.

(Circuit Court of Appeals, Eighth Circuit. November 4, 1910.)

Nos. 3,271–3,383.

*(Syllabus by the Court.)*

1. INTOXICATING LIQUORS (§ 327*)—INSURANCE OF LIQUORS IN IOWA—CLAIM OF INVALIDITY UNDER PROHIBITION POLICY AND LAWS MUST BE PLEADED.

The statutes and public policy of Iowa, with limited exceptions, prohibit the sale and render illegal the possession of intoxicating liquor in that state and forbid the maintenance of actions to recover such liquor or its value. Certain insurance companies issued policies of insurance against fire upon the whisky of a manufacturer stored in a bonded warehouse in that state, and challenged judgments against them for its loss by fire on the ground, which they did not plead, that the contracts were illegal and invalid because in conflict with the prohibition policy and laws of that state.

*Held*, a pleading of the invalidity of contracts of insurance of intoxicating liquor on the ground that they violate the public policy or statutes of a state which prohibit the sale and possession of such an article, but which do not expressly forbid or avoid contracts of insurance thereof, is indispensable to a successful defense on that ground to actions upon such contracts.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 467; Dec. Dig. § 327.*]

2. INTOXICATING LIQUORS (§ 327*)—CONTRACTS (§ 139*)—INSURANCE OF LIQUORS IN IOWA AGAINST FIRE, VALID.

A contract of insurance of whisky stored in Iowa is not void because it tends to assist the insured to violate the public policy and laws of Iowa against the possession and sale of intoxicating liquors therein.

It is no defense to a contract that has been performed by the promisee that the promisor knew that the agreement or its performance might aid the promisee to violate a law or a public policy, when the promisor did

---

not combine or conspire with the promisee to accomplish that result and did not share in the benefits of such a violation.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 467; Dec. Dig. § 327;* Contracts, Cent. Dig. §§ 684–700; Dec. Dig. § 139.*]

3. COURTS (§§ 259, 363*)—FEDERAL COURTS—STATE LAWS MAY NOT IMPAIR JURISDICTION—IOWA STATUTE AGAINST ACTIONS FOR LIQUOR INEFFECTIVE.

The jurisdiction of the national courts was not granted by, and may not be revoked, annulled, or impaired by, the law or act of any state.

Section 2423 of the Code of Iowa, which prohibits the maintenance of actions for the recovery of intoxicating liquor or its value, with certain exceptions, is inapplicable to actions in the national courts and ineffective to prevent their maintenance.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 795, 796, 939–949; Dec. Dig. §§ 259, 363.*

Jurisdiction as affected by state laws, see note to Barling v. Bank of British North America, 1 C. C. A. 513.]

4. INSURANCE (§ 640*)—PLEADING—CLAIM THAT COST OF REPLACING IS LESS THAN ACTUAL CASH VALUE MUST BE PLEADED.

The claim that it would cost the insured less than the actual cash value of the property destroyed or damaged to repair or replace it with material of like kind and quality is an affirmative defense under the provision of a policy which reads: "This company shall not be liable beyond the actual cash value of the property covered by this policy at the time any loss or damage occurs, and said liability shall in no event exceed what it would cost the insured to repair or replace the property lost or damaged with material of like kind and quality." And a pleading of this claim is indispensable to its successful maintenance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1609–1624; Dec. Dig. § 640.*]

5. INSURANCE (§ 499*)—COST OF PURCHASING, NOT OF MANUFACTURING, A LIKE PRODUCT IS MEASURE OF MANUFACTURER'S COST OF REPLACING WHISKY AND LIKE ARTICLES.

Under the clause of the policy which has been quoted, the measure of an insured manufacturer's cost of replacing whisky and like products, whose manufacture occupies considerable time and whose value increases with age, is not the cost of the raw material of which a like product may be made and of the labor required to make it, but it is the cost of immediately replacing the article by a like product in the most inexpensive way by purchase or otherwise.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1274; Dec. Dig. § 499.*]

6. INSURANCE (§ 499*)—MEASURE OF MANUFACTURER'S INDEMNITY ACTUAL VALUE, NOT COST OF MANUFACTURE.

Where the product insured has changed in value between the time of its manufacture and that of its destruction, and its manufacture occupies considerable time, the manufacturer is not limited to the cost of making the article, but may recover its actual cash value at the time of the fire, whether a profit or a loss results to him from the use of that measure of recovery.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1274; Dec. Dig. § 499.*]

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Action by the C. A. Hoover Distilling Company against the Mechanics' Insurance Company of Philadelphia, the St. Paul Fire & Marine Insurance Company, the Phenix Insurance Company of Brooklyn, N. Y., the Royal Insurance Company of Liverpool, the German American

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Insurance Company of New York, the Insurance Company of North America, the North British & Mercantile Insurance.Company of London and Edinburgh, the Rochester German Insurance Company of Rochester, N. Y., the Phœnix Insurance Company of Hartford, Conn., the Fire Association of Philadelphia, the City of New York Insurance Company of New York, the Security Insurance Company of New Haven, and the Ætna Insurance Company of Hartford, Conn. Actions were, consolidated. Judgment for plaintiff, and defendants bring error. Affirmed.

See, also, 173 Fed. 888.

Charles B. Obermeyer and A. C. Parker (N. T. Guernsey and W. E. Miller, on the brief), for plaintiffs in error.

John F. Lacey (W. R. Lacey, Walter C. Burrell, James A. Devitt, and Wm. McNett, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. The C. A. Hoover Distilling Company made whisky for about three years and placed it in a bonded warehouse at Oskaloosa in the state of Iowa. It procured from many insurance companies policies of insurance against fire upon it. On May 15, 1908, it burned. The Hoover Company brought actions on the policies; 15 of these actions were consolidated and tried together in the court below, verdicts and judgments were rendered against the companies, and 13 of them are challenged by the writs of error in these cases.

The first reason given in the printed argument of counsel for the insurance companies for a reversal of these judgments is that the contracts of insurance were against the prohibition policy of the state of Iowa and were not actionable because the whisky was made and stored in that state and was intended for sale therein. But this defense was not available without pleading under Code Iowa, § 3629, and the decisions of its courts (Riech v. Bolch, 68 Iowa, 526, 527, 27 N. W. 507), which, under the act of conformity, govern the pleadings, practice, and proceedings in these actions (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), and it was not pleaded. Moreover, it was not presented by any. request for an instruction sustaining it at the close of all the evidence; but, on the other hand, the first request made by the defendants after the trial closed ignored it and asked the court to charge the jury that the plaintiff in each of these cases was entitled to recover the actual cash value of the whisky burned not exceeding the cost of replacing it with material of like kind and quality. The only ruling during the trial upon this defense which is presented by the requisite exception and assignment of error to enable us to consider it is the refusal of the court at the close of the plaintiff's evidence to grant a motion to direct a verdict in favor of the insurance companies. But the defendants waived that objection and exception by their subsequent introduction of evidence on the merits of the case in their own behalf (United States Fidelity & Guaranty Co. v. Board of Commissioners, 145 Fed. 144, 150, 76 C. C. A. 114, and cases there cited), and

they estopped themselves from presenting the contention they now urge to defeat the judgments by their request of the court at the close of the trial to instruct the jury that the plaintiff was entitled to recover the cash value of the whisky not exceeding the cost of replacing it. Parties may not avail themselves of errors which they have themselves committed, or which they have induced the referee or judge who tried their case to make. Walton v. Chicago, St. Paul, M. & O. Ry. Co., 56 Fed. 1006, 1008, 6 C. C. A. 223, 225; National Loan & Investment Co. v. Rockland Co., 94 Fed. 335, 336, 36 C. C. A. 370, 371; Chase v. Driver, 92 Fed. 780, 786, 34 C. C. A. 668, 674.

From these established rules of practice counsel endeavor to escape on the ground that the manufacture and sale of whisky is against the policy of the state of Iowa, that its possession is presumptively illegal (Sommer v. Cate, 22 Iowa, 585; Walker v. Shook, 49 Iowa, 264), that section 2423 of the Code of Iowa provides that no action shall be maintained for the recovery of possession of any intoxicating liquor, or the value thereof, except in cases where persons owning or possessing such liquor with lawful intent may have been illegally deprived of the same, that the insurance of whisky aids in the defiance of the public policy of prohibition and is, therefore, illegal, and that the courts without pleading, objection, or exception ought to refuse to enforce an illegal contract of this nature. Notwithstanding the prohibition policy of the state of Iowa, its laws authorize the sale and storage for sale of intoxicating liquors upon the payment of specified taxes upon certain conditions with which parties often comply, so that whisky may be lawfully kept, stored, and sold in that state. Code Iowa, §§ 2432, 2448. Conceding, however, that the general policy of the state is to forbid its manufacture or sale, and conceding that its possession, in the absence of proof of a lawful intent—and there was no such proof in this case— was evidence of an illegal purpose and rendered its possession unlawful, it does not follow that its insurance against fire was either illegal or violative of the prohibition policy of the state. This whisky was stored in a bonded warehouse, and the insurance of it against fire neither violated nor had any direct tendency to violate the policy of the state which forbade its manufacture and sale. While the whisky remained stored, it could be neither made nor sold. If the whisky burned, it could not be thereafter sold, and neither the payment nor the contract to pay its value in the event that it was burned could make its manufacture, storage, or sale after the burning possible. Even if these contracts of insurance had the effect to make the business of the manufacture and sale of the liquor less hazardous, and in that way to encourage the conduct of that business, nevertheless that encouragement was not the chief purpose or direct effect, but was a mere incident of the indemnity against loss by fire which the policies were made to secure. The laws of Iowa contain no express prohibition of the insurance of intoxicating liquors against fire, its Supreme Court had sustained a contract for such insurance (Erb v. Fidelity Ins. Co., 99 Iowa, 727, 733, 69 N. W. 261), there was no moral turpitude in the making or the performing of this contract, and the mere fact that an agreement, the consideration and performance of which are lawful, inci-

dentally assists one in evading a law or a public policy, is no bar to its enforcement (Hanover National Bank v. First National Bank, 109 Fed. 421, 425, 48 C. C. A. 482, 486; Jefferson v. Burhans, 29 C. C. A. 481, 85 Fed. 949; Kansas City Hydraulic Press Brick Co. v. National Surety Co., 167 Fed. 496, 500, 93 C. C. A. 132, 136). And it is no defense to a contract that has been performed by the promisee that the promisor knew that the agreement or its performance might aid the promisee to violate the law or to defy the public policy of the state when the promisor neither combined nor conspired with the promisee to accomplish that result, nor shared in the benefits of such a violation. Jenson v. Toltec Ranch Co., 174 Fed. 86, 91, 92, 98 C. C. A. 60, 65, 66; Wald's Pollock on Contracts (3d Ed.) 485; Armstrong v. Toler, 11 Wheat. 258, 273, 6 L. Ed. 468; Armstrong v. American Exchange Bank, 133 U. S. 433, 10 Sup. Ct. 450, 33 L. Ed. 747; Hanover National Bank v. First National Bank, 109 Fed. 421, 48 C. C. A. 482; Waterbury v. McKinnon, 146 Fed. 737, 77 C. C. A. 294, 296; Ingraham v. National Salt Co., 130 Fed. 676, 681, 65 C. C. A. 54, 59; Taylor v. Mining Company, 79 Cal. 285, 287, 21 Pac. 753; Illinois Trust & Sav. Bank v. Pacific Ry. Co., 117 Cal. 332, 49 Pac. 197, 201; Holman v. Johnson, 1 Cowp. 341; Faikney v. Reynous, 1 Burr. 2069; Pellecat v. Angell, 2 Crompt., Mees. & Ros. 311; Hodgson v. Temple, 5 Taunt. 181; Marion Trust Co. v. Crescent Loan & Investment Co., 27 Ind. App. 451, 61 N. E. 688, 691, 87 Am. St. Rep. 257; Wright v. Hughes, 119 Ind. 324, 21 N. E. 907, 909, 12 Am. St. Rep. 412; First National Bank v. Dovetail Body & Gear Co., 143 Ind. 550, 40 N. E. 810, 812, 52 Am. St. Rep. 435; Tracy v. Talmage, 14 N. Y. 162, 67 Am. Dec. 132; Thompson v. Lambert, 44 Iowa, 239, 245.

The provision of the state statute which forbids the maintenance of any action for the recovery of any intoxicating liquor or its value, except where persons owning or possessing it with lawful intent have been illegally deprived of it, found in section 2423 of the Code of Iowa, was not intended to apply to and does not affect suits and proceedings in the federal courts. A state is without power to prohibit or condition the exercise by citizens of different states of their respective rights to institute and defend their suits in the national courts and to invoke the independent judgment of these courts upon their controversies in the cases and in the manner prescribed by the Constitution and laws of the United States which are the supreme law of the land. The jurisdiction of these courts was not granted by, and it cannot be revoked, annulled, or impaired by, the law or act of any state. Payne v. Hook, 7 Wall. 425, 430, 19 L. Ed. 260; Barber Asphalt Paving Co. v. Morris, 66 C. C. A. 55, 58, 132 Fed. 945, 948, 67 L. R. A. 761; Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167, and the cases there cited.

The policies of insurance were not prohibited by the statutes or contrary to the public policy of the state of Iowa, and its laws were ineffective to forbid the maintenance of actions upon them in the national courts, and the objection to the judgments in issue on these grounds cannot be sustained.

The policies upon which these judgments are founded contain this clause:

"This company shall not be liable beyond the actual cash value of the property covered by this policy at the time any loss or damage occurs and said liability shall in no event exceed what it would cost the insured to repair or replace the property lost or damaged with material of like kind and quality."

There was evidence that the whisky destroyed was branded and called "Hoover whisky," that it was made of the best materials, and that its brand and reputation enhanced its value at Oskaloosa, Iowa, where it was burned, above that of other whisky of the same quality made of like materials, and made it more readily salable. Evidence was introduced of the value of whiskies of other brands of like quality; but there was no evidence of the cost of manufacturing the "Hoover whisky," or any others, or of the cost of the materials and labor required to make any of them.

The court refused to charge the jury that:

"Under the provisions of the several policies sued upon in the several actions named, plaintiff is entitled to recover the actual value of the entire stock of the whisky consumed by fire, not exceeding, however, what it would have cost the plaintiff to replace the same by material of like kind and quality."

And it is charged them that:

"The contract is as follows: 'This company shall not be liable beyond the actual cash value of the property covered by this policy at the time of the loss.' That means the actual cash value at Oskaloosa, Iowa. The actual cash value is not found by ascertaining what it cost to make it, such as the price of grain, the interest on the investment and considering the depreciation of machinery, cost of labor, salaries, etc. The actual cash value at Oskaloosa immediately before the fire is the test. * * * Market prices for liquors made elsewhere are in evidence. Such evidence is not necessarily controlling, but may or may not be used by you accordingly as you find as to the brand and reputation of Hoover whisky. If you find the plaintiff's whisky, known as 'Hoover whisky' by reason thereof, and by reason of the reputation thereof, had an enhanced value over and above whisky of like kind, made of like or nearly like percentages of grain and ingredients and ages, and that by reason of its quality, and by reason of its reputation, it had a market value, and such market value would enable it to be sold within a reasonable time, then you may consider its name and reputation together with the evidence of market values of other like whiskies, except in name. If you find that its name or brand, or lack of brand, did not give it a value over and above like whiskies as to age and ingredients, then you will find a value from the market prices in evidence of such other like whiskies as to age and ingredients and make. The value of the whisky is not necessarily the price asked or demanded by plaintiff at Oskaloosa. The evidence that some saloon keepers and druggists bought the Hoover whisky at 90 cents a gallon over and above the $1.10 government tax would not of itself fix or show a wholesale market. In determining the value and whether there was a wholesale market, you will consider the age and ages of the whiskies, the brand and reputation, if any, and, if a valuable reputation, the demand therefor, or lack of demand, and the amount of sales and all other facts in evidence.

"The policy also provides, and to which I call your attention, that the value you are to fix in your verdict shall in no event exceed what it would cost the Hoover Distilling Company to replace the whiskies destroyed of like kind and quality. What I have just said as to value is pertinent to this recital of the policy. If the Hoover whisky had a market, as hereinbefore stated, and if by reason of its brand and reputation could not be replaced by and with other whiskies of like quality, then the clause just noticed is no defense herein, and you will not consider it, but alone will consider the other clause fixing plaintiff's recovery at the actual cash value of the whisky destroyed by fire. But if there was no market as defined, or if the brand, or name, or reputa-

tion did not enhance the value, then your verdict as to amount will not exceed what it would cost to replace the whiskies with other whiskies of like kind and quality, and you will consider the amount of whiskies on hand, the sales that had been made, the sales that would probably be made within a reasonable time, the prices obtained, the reputation, or lack of reputation, plaintiff's whiskies had, the value in the market of whiskies made or sold elsewhere of like ages and ingredients, and all facts in evidence, and arrive at the amount that the case demands in fairness."

The defendants below excepted to this charge because it did not instruct the jury that there was no evidence of market value or wholesale market value at Oskaloosa, Iowa, because it did not state what constituted a market value at that place, because it did not tell the jury without qualification that in any event in ascertaining the actual cash value of the whisky they should consider the evidence tending to show the actual market value of other similar whiskies, not only in Oskaloosa, but elsewhere, because it directed the jury to take into consideration whether or not the name or brand added to the value of the liquor destroyed and because it told the jury that they should not consider the cost of making the whisky.

There was no error in the instruction to the jury to consider and determine whether or not the name or brand of the plaintiff's whisky enhanced its value above that of other like whiskies, because there was substantial evidence that it did. For the same reason the court's qualification of its instruction that the jury should consider the evidence of the actual market value of similar whiskies to the effect that, if they found that the name or brand of complainant's whisky did not give it a value above that of other whiskies similar to it in age and ingredients, they should ascertain its value from the market prices of such other whiskies in evidence, but that, if they found that the name or brand of this whisky gave it a greater value than such other whiskies, they might consider its name and reputation together with the evidence of the market values of the other whiskies in finding the value of the whisky burned, was so clearly right that the question here presented is not debatable.

The objection to the charge which counsel urge with the most zeal and apparent confidence, however, is that the court failed to instruct the jury that the plaintiff could not recover more than the amount it would have cost that corporation to have replaced the whisky by purchasing the malt, the rye, the corn, and the other materials of a kind and quality similar to those from which this whisky was manufactured and making a like product. But that defense was not pleaded, and there was no evidence to sustain it. The plaintiff alleged that the whisky burned was worth $124,766.19, and the defendants denied that it was worth more than $37,000, but they made no allegation of the cost of replacing it. On this issue the case went to trial. After the plaintiff had rested, the defendants introduced evidence of the cost of the rye, the corn, and similar materials requisite to manufacture a similar whisky, but subsequently withdrew all evidence of this character, and in that state of the pleadings and proof the case went to the jury. Under the policies the actual cash value of the property at the time of the fire was the primary basis for the measure of liability of the companies. The provision that this

liability should in no event exceed the cost to the insured of replacing the property and all like subordinate provisions limiting or abating the primary liability of the insurer constituted no part of the insured's cause of action upon a breach of the contract. They are inserted in the policy for the benefit of the insurer, and they must be pleaded by the latter if it would diminish or limit the amount of the recovery by reason of them. Farmers' Bank v. Manchester Assur. Co., 106 Mo. App. 114, 80 S. W. 299, 302; Port Blakely Mill Co. v. Hartford Fire Ins. Co., 50 Wash. 657, 97 Pac. 781; Ætna Ins. Co. v. McLead, 57 Kan. 95, 45 Pac. 73, 57 Am. St. Rep. 320; Sutherland v. Ins. Co., 87 Iowa, 505, 508, 509, 54 N. W. 453.

Again, the measure under this clause of the policy of the liability to a manufacturer for the burning of a product like whisky, whose manufacture occupies much time and whose age constantly enhances its value, is not the cost of the raw materials for and of the labor requisite to make new whisky, but it is the cost of immediately replacing that product in the most inexpensive way by purchase or otherwise with a similar product of like kind and quality. Frick v. United Firemen's Ins. Co., 218 Pa. 409, 67 Atl. 743, 746; Mitchell v. St. Paul German Fire Ins. Co., 92 Mich. 594, 52 N. W. 1017, 1019; Hartford Fire Ins. Co. v. Cannon, 19 Tex. Civ. App. 305, 46 S. W. 851, 852; Phillips v. Home Ins. Co., 128 App. Div. 528, 112 N. Y. Supp. 769, 770.

Finally, counsel complain of the charge because it did not limit the recovery to the amount which it cost the plaintiff below to make the whisky, and thereby permitted them to give to the plaintiff the manufacturer's profit, and because the court did not instruct them that there was no evidence of the market value of this whisky at Oskaloosa and failed to state in the terms of a request made by counsel what constituted the market value of the product at that place. But there was no evidence what amount the manufacture of the whisky cost the plaintiff, and there was evidence tending to show its cash value and its market value at Oskaloosa. The court, therefore, could not have lawfully limited the plaintiff's recovery to the cost of the manufacture of the whisky, and there was no evidence that the cash value or the market value included a profit to the manufacturer.

Moreover, this whisky had been made and placed in a bonded warehouse during a period of more than two years. There were about 127,000 gallons of it. Age enhances the cash value and the market value of this article, and some of the liquor destroyed was 30 months old, while the remainder of it varied in age from 30 months to a few days. Its value had been enhanced beyond its cost by the brand and reputation that had been given to it. Much time had been required to make it and much to age it. Under circumstances of this nature, the manufacturer is not limited to a recovery of the amount it would cost him to make and age a like product, because that would not be the actual cash value of the product destroyed. Where the product insured has changed in value between the time of its manufacture and that of its destruction, and where much time

is required to make it, the manufacturer is not limited to the cost of manufacture, but may recover the actual cash value of his property at the time of the fire whether a profit or a loss results to him from the application of that measure of damages. Mitchell v. St. Paul German Fire Ins. Co., 92 Mich. 594, 52 N. W. 1017; Hartford Fire Ins. Co. v. Cannon, 19 Tex. Civ. App. 305, 46 S. W. 851.

In the usual course of business distillers do not sell at one time all the whiskies stored in their warehouses, but they sell the older and retain the younger to the end that its increasing age may enhance its value. Oskaloosa had a population of about 5,000 people. The plaintiff in the three years before the fire sold to retail dealers and others in and about that town 300 barrels of its whisky, and it sold very little elsewhere. The tax on this article was $1.10 per gallon, and the plaintiff sold it at 90 cents a gallon and the tax, or at $2 per gallon tax paid. Several retail dealers in liquors in Oskaloosa testified that they bought and sold this whisky, that they knew its market value in Oskaloosa, that its value was $2 per gallon tax paid, that its actual cash value and its market value were the same, that the plaintiff fixed its price and they bought, and the whisky was in demand, at that price, and that it sold more readily than other whiskies of like quality. The defendants introduced evidence that the market value of other whiskies was from 29 cents to 90 cents a gallon, that this value depended somewhat upon the age and the brand of the product, and that the actual cash value of the "Hoover whisky" at Oskaloosa at the time of the fire was from 30 cents to 50 cents a gallon. And there was evidence that there was little, if any, purchase or sale of whisky by jobbers or wholesalers in the town of Oskaloosa. In this state of the case, the defendants requested the court and it refused to charge in the words of their counsel what constituted the market value of the "Hoover whisky." But the uncontradicted evidence was that the actual cash value and the market value of this product were the same, and a reading of the charge of the court has convinced us that in the light of this fact the court instructed the jury to consider in finding the actual cash value of the article every element of the evidence pertinent to that issue. It charged them to consider the market prices of liquors made elsewhere, the effect of the Hoover brand and reputation, whether or not the Hoover whisky had a market value at which it could be sold in a reasonable time, that its value was not necessarily the price asked for it by the plaintiff at Oskaloosa, that the purchase of it by some saloon keepers at $2 a gallon tax paid would not of itself fix or show a wholesale market, but that in determining whether or not there was such a market they should consider the ages of the whiskies, their brand and reputation, the demand therefor, the amount of sales, and all other facts in evidence. In view of these instructions, there was no error in this part of the charge, nor was there in the refusal to submit the requested instructions. Where the pertinent rules for the determination of an issue are clearly set forth in the general charge of the court, it is not error for the judge to refuse to submit them in the words of counsel. Chicago Great West-

ern Ry. Co. v. Roddy, 65 C. C. A. 470, 475, 131 Fed. 712, 717; St. Louis, I. M. & S. Ry. Co. v. Leftwich, 54 C. C. A. 1, 4, 117 Fed. 127, 130.

It is assigned as error that the court refused to instruct the jury that the evidence (1) failed to show that there was a wholesale market at Oskaloosa, but this question was properly submitted to the jury under the charge of the court which has been reviewed, and (2) that the court declined to charge them that they should disregard the opinion of any witness who based his opinion solely on the fact that the plaintiff fixed the price of whisky at $2 per gallon and the whisky was sold to dealers as shown in the evidence at said price, but it is in no wise certain from the evidence that any witness based his opinion solely upon these facts or upon these circumstances, and the weight or effect of such an opinion was for the jury, and not for the court. The opinions of these witnesses constituted admissible evidence tending to show the actual cash value and the market value of the property destroyed, and its exclusion from the jury could not have been sustained.

There was no error in the trial of these cases, and the judgments below must be affirmed.