No. 12,234.

DENVER PARK AND AMUSEMENT COMPANY *v.* KIRCHHOF
ET AL.
(3 P. [2d] 411)

Decided January 12, 1931.

400

Messrs. McComb & Strong, for plaintiff in error.

Mr. Walter E. Schwed, Mr. Ernest L. Rhoads, Mr. Bernard J. Seeman, Mr. John E. Gorsuch, Mr. Fred Farrar, Mr. Wendell Stephens, Mr. Frederick P. Cranston, Mr. J. E. McCall, Messrs. Grant, Ellis, Shafroth & Toll, Mr. C. Russell Shetterly, Mr. Josiah G. Holland, Messrs. Fillius, Fillius & Winters, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

For convenience we hereinafter designate these parties as do counsel in their briefs, i. e., plaintiff in error Denver Park and Amusement Company as Denver Park, and defendants in error Francis J. Kirchhof as Kirchhof, Denver Greyhound Racing Association as Greyhound, the W. B. Barr Lumber Company as Barr, Ramapo Ajax Corporation as Ramapo, Charles E. Buckman as Buckman, the Hendrie & Bolthoff Manufacturing & Supply Company as Hendrie, the Colorado Fuel & Iron Company as C. F. & I., the Duvall-Davison Lumber Company as Duvall, and the American National Bank as the bank.

This is a mechanic's lien case. Denver Park owned certain real estate which it leased to one Throckmorton who, with its consent, assigned to Greyhound. The bank, as trustee for bondholders, held a mortgage on this prop-

erty. Greyhound erected thereon a race track, grand stand, etc., and for a time operated a dog racing enterprise. This business, because of its gambling features, apparently collided with the criminal law and expired without paying for the improvements. Kirchhof, having furnished material and labor and filed his mechanic's lien statement, brought this action to foreclose the same. Defendants Barr, Ramapo, Buckman, Hendrie, and C. F. & I., having also furnished material and labor and filed their statements, sought judgments of foreclosure by counterclaim. Greyhound apparently having nothing but a cancelled lease and a disastrous experience, the lien claimants were obliged to look for satisfaction solely to the real estate and the improvements. All obtained personal judgments against Greyhound and judgments of foreclosure of their liens, some on one part of the property, some on another. Denver Park, contesting all these liens, brings error. Some of the claimants, not satisfied with the relief granted them, assign cross errors.

The real estate involved is that part of the N. E. ¼ of sec. 24, T. 3 S., R. 69 W., which lies north of the right of way of the Denver & Northwestern railway. Denver Park's second defense was that only the east 900 feet thereof was necessary to the enjoyment of the improvements and the court so held. The bank's mortgage was of record before the improvements in question were made. Kirchhof's contract with Greyhound was for the cost of material and labor furnished by him plus ten per cent of the cost of all material and labor by whomsoever furnished. Barr claimed a lien only on "blocks 15 and 16 Lakeside Park." As such these had long since been vacated but lay within the east 900 feet here involved. Barr's lien was therefore established only on the area formerly included in those blocks. The cause comes to us on an "agreed record on error" covering 126 typewritten pages. Each claimant was awarded a personal judgment for the full amount claimed, against Greyhound only, including interest prior to date of the decree,

and each claimant, except Kirchhof, was awarded a judgment against the property, or some of it, for the full amount. All liens against the land were entered subject to the lien of the bank. The property was ordered sold in four separate parts: (a) The improvements on blocks 15 and 16; (b) the improvements on the remainder of said 900 feet; (c) the land formerly included in said blocks; (d) the remainder of the land.

Denver Park's lease to Greyhound provided inter alia, for a term of five years at a total rental of $12,500. Lessee to pay all charges, including taxes, give a bond against liens, carry liability insurance against accidents of every kind, and compensation insurance under the state law, not use the premises for any unlawful purpose, and remove all improvements within thirty days of termination, if required by lessor. At the expiration of the term all permanent improvements became the property of lessor. Permission was given lessee to assign once to a corporation organized by him, but other assignments required written consent. Lessor (who owned Lakeside Park, an amusement and recreation place adjoining) reserved permission to pass its patrons direct into the leased premises at the regular gate admission, and required lessee to pass all its patrons out through Lakeside Park. Lessor also reserved the right to use the premises when lessee was not holding, or had scheduled, any "exhibition" or "performance." Ten days after its date this lease was assigned to Greyhound. That assignment refers to it as "that certain lease obtained * * * for dogracing track purposes."

Denver Park assigns 48 errors and these it argues under seven divisions: (a) No right of any lien claimant as against Denver Park; (b) vital defects in the procedure of each; (c) special defects in the procedure of Hendrie; (d) sustaining of demurrers to its defenses 3, 4, 5 and 6; (e) Buckman's improvement was new and separate and Barr's lien statement contained no description, hence neither could recover; (f) Kirchhof's award was

excessive; (g) sale should have been limited to removable machinery, and in any event the property should be sold entire. We have carefully examined each of these and, as at present advised, are all of the opinion that, save the portion of "d" hereinafter discussed, they are not well taken, and that, but for those assignments, the judgment should be affirmed, except for a reduction of $120.23 in the lien claim of Kirchhof to which the latter consents. However, because of our conclusion as to said portion of "d," it appears that a discussion and adjudication as to the other assignments would at this time, be premature.

Denver Parks' fourth, fifth and sixth defenses to the complaint of Kirchhof were likewise pleaded in answer to the demand of each of the other lien claimants, and in each case a demurrer was sustained thereto. The fourth defense, quoting from the abstract, was: "That Greyhound caused the improvements for the purpose of conducting a racing track for racing dogs and engaged in conducting the same for racing dogs by using the improvements in September and October, 1927, and such racing was so controlled and conducted by it for the purpose of gambling and wagering in violation of the laws of Colorado and for gambling and betting on the results of such races in violation of such laws; and that persons were encouraged to enter said premises for the purpose of gambling and betting on the races and the results of the races, and attended in large numbers and gambled and bet large sums of money upon the races, with the consent and procurement of Greyhound and in violation of such laws, and Kirchhof knew that the work, labor and materials furnished by him were to be used by Greyhound for said purpose and in pursuit of such gambling and betting enterprises; and Kirchhof supervised and conducted the erection of the structures and buildings for the convenience of persons entering for gambling and betting on the premises, and arranged the same for the purposes of gambling and betting, and engaged in con-

certed plan with Greyhound to violate such laws relative to gambling and betting and to conducting a gambling enterprise and anticipated and understood that a substantial part of his compensation for such erection was to be paid from profits derived from conducting such gambling and betting enterprise and the contract between him and Greyhound was based upon an illegal consideration and unenforcible.''

The fifth defense is a substantial repetition of the fourth, save that it adds the additional charge that the contract between Kirchhof and Greyhound was contrary to public policy. We think it adds nothing to the fourth defense and for that reason give it no further consideration.

The sixth defense alleged that the use of the premises for unlawful purposes was prohibited by the lease which was violated by Greyhound with the knowledge of Kirchhof. This adds nothing to the fourth defense and is a mere attempt to plead the innocence of Denver Park, which, in view of the assignment of the lease and all the other circumstances appearing by this record, amounts to nothing more than a touch of humor. We therefore here concern ourselves only with the fourth defense.

While on each such adverse ruling error is assigned, counsel for Denver Park devote thereto but 38 lines of 108 pages of briefs and cite no authority. This the bank adopts. Kirchhof answers with five pages, citing only *Rose v. Mitchell,* 6 Colo. 102. Hendrie devotes four pages to the subject, citing only the Rose case and *Mechanics' Ins. Co. v. Hoover Distilling Co.,* 182 Fed. 590, 593. The remaining parties adopt the brief of Hendrie thereon.

■■ It can scarcely be concluded that plaintiff in error placed much reliance on this defense. Kirchhof and Hendrie, aside from the two citations, base their arguments on the evidence. But since the defenses were stricken the evidence is incidental and affords no sufficient information as to the facts. What evidence would have been produced had the defenses been sustained we

have no means of knowing. We think the most casual reading of the Rose case discloses that it is not in point. It involved the sale by one merchant to another of property which might be used for gambling. There was neither plea nor proof that the buyer intended to, or did, so use it.

The Mechanics' Ins. Co. case was a suit by a distilling company against certain insurance companies for loss by fire of whiskey stored in a warehouse in Iowa. Judge Sanborn, who writes the opinion, points out that the laws of Iowa authorize the sale and storage for sale, under certain conditions, of intoxicating liquors, and that the Supreme Court of that state had sustained a contract for such insurance. The authority is clearly not applicable.

In England it is held that where real estate was sold for lottery purposes the courts would not enforce security for the purchase price. *Fisher v. Bridges,* 3 E. & B. 643, 118 Reprint, 1283.

The owner of a race track in the District of Columbia who leased it for gambling purposes was denied a right of action for the recovery of rent. *Holmead v. Maddox,* 2 Cranch C. C. 161, 12 Fed. Cas. No. 6629.

A carpenter was not allowed to recover for his services in erecting a ninepin alley, use of which was prohibited by law. *Spurgeon v. McElvain,* 6 Ohio 442, 27 Am. Dec. 266.

Where lessor and lessee "understood and expected" that leased premises would be used partly for the sale of liquors therein, in violation of law, it was held that since the lease itself was not enforcible, a bond for the rent could not be enforced. *Mound v. Barker,* 71 Vt. 253, 44 Atl. 346, 76 Am. St. Rep. 767.

The strongest cases we find to the contrary are: *Michael v. Bacon,* 49 Mo. 474; *Bryson v. Haley,* 68 N. H. 337, 38 Atl. 1006. Neither of these, however, answer said fourth defense. In the Michael case it is held, "If the merchant is not to be paid out of the illicit gains of the gambling, and is not connected by contract with the

object the gambler has in view, his knowledge of the purpose does not vitiate the sale." Here, however, both payment out of illicit gains and connection by contract are alleged.

The opinion in the Bryson case consists of but five lines and assumes no fact to preclude the workman from recovering save knowledge of the intent to put to an unlawful use.

"The weight of authority seems to be to the effect that the knowledge of the unlawful purpose on the part of those furnishing materials or labor [for the erection of structures to be used for gambling] will defeat recovery." 27 C. J., p. 1069, §294; see also notes 1 and 2, 53 A. L. R., pp. 1366, 1372.

The law of this jurisdiction, in relation to the attempted enforcement of illegal contracts, as to which parties stand in pari delicto, has recently been definitely stated. *Baker v. Couch,* 74 Colo. 380, 221 Pac. 1089; *Baker v. Sockwell,* 80 Colo. 309, 251 Pac. 543.

The demurrer to said fourth defense was erroneously sustained. It hence appears necessary that issue be joined and tried thereon. To that extent and for that purpose only the judgment is reversed and the cause remanded.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE ADAMS and MR. JUSTICE BUTLER concur.